# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

ETUATE SEKONA,

              Plaintiff,

      v.

R. PEREZ, et al.,

              Defendants.

1:19-cv-00400-NONE-GSA (PC)

**ORDER DISMISSING COMPLAINT FOR VIOLATION OF RULE 8 AND FOR FAILURE TO STATE A CLAIM UNDER § 1983, WITH LEAVE TO AMEND (ECF No. 1.)**

**THIRTY-DAY DEADLINE TO FILE AMENDED COMPLAINT NOT EXCEEDING 25 PAGES**

## I.  BACKGROUND

Etuate Sekona ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983.  On March 28, 2019, Plaintiff filed the Complaint commencing this action, which is now before the court for screening.  28 U.S.C. § 1915.  (ECF No. 1.)

## II.  SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).   Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).   While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).   To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).   While factual allegations are accepted as true, legal conclusions are not. Id.   The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

## III.   SUMMARY OF COMPLAINT

Plaintiff is presently incarcerated at Kern Valley State Prison in Delano, California, where the events at issue in the Complaint allegedly occurred when Plaintiff was incarcerated there in the custody of the California Department of Corrections and Rehabilitation (CDCR).   Plaintiff names as defendants Correctional Officer (C/O) R. Perez, (C/O) L. Munoz, (C/O) C. Sims, and (C/O) Maldonado (collectively, "Defendants").   Plaintiff proceeds against Defendants in their individual and official capacities.

Plaintiff's allegations follow[1]:

Defendant C/O Perez is a floor watch officer on the second watch shift on the SNY[2]

---

[1] Plaintiff's allegations in the Complaint are rambling, difficult to deciphe, and interspersed with legal argument and case cites.   The court has made a good faith attempt to report the allegations reflecting the meaning intended by Plaintiff.

[2] Sensitive Needs Yard.

yard, Building D-4. Plaintiff was an inmate there in cell #130.

On October 30, 2018, defendant C/O Perez heard Plaintiff speaking to his lawyer on the telephone in the office of the D-4 Building.  Perez listened to Plaintiff and his lawyer talk about settling Plaintiff's case no. 2:17-cv-0346-KJM-EFP.  Perez said to Plaintiff, "You [are] going to [get] lots of money!"  (Complaint, ECF No. 1 at 6:6.)  After that day Perez acted negatively toward Plaintiff, harassing him and expressing an intent to injure Plaintiff.  She [Perez] harassed Plaintiff, violated his First Amendment rights, and subjected him to anti-Semitism because of his litigation and his race.

Plaintiff's cellmate Nguyen harassed him, threatened him, and stole his property.  When Plaintiff was at school, Nguyen gave Plaintiff's things to one of Nguyen's friends.  Plaintiff told defendant Perez but she ignored it until his cellmate attacked him.  On November 17, 2018, Plaintiff was assaulted by his cellmate Nguyen, who punched Plaintiff in the face, jaw, neck, and head and kicked Plaintiff when he was down.  Plaintiff was hospitalized for 2 days with bleeding on the brain, which persisted for a month.  Plaintiff suffered brain damage, bleeding on the brain, anxiety and depression, mental disorder, and permanent pain and suffering.  Inmate Nguyen had not been Plaintiff's choice as a cellmate. Defendant Perez had handpicked inmate Nguyen, and Nguyen attacked Plaintiff and hurt him badly.  This was elder abuse.  Perez took a report from Plaintiff about his cellmate.  Perez moved Nguyen out of Plaintiff's cell and handpicked a new cellmate for Plaintiff to stop him from complaining.

Defendant Perez went to Building D-3 and picked a younger cellmate, Miko, for Plaintiff, without Plaintiff's consent to harm and hurt Plaintiff.  Plaintiff told defendant Perez that if any assault occurs it will be from her failure to let Plaintiff choose his own cellmate.  Previously, on July 23, 2018, Sergeant Delima [not a defendant] told Plaintiff to suggest a cellmate he was comfortable and compatible with, but defendant Perez did not like that idea.  Plaintiff gave Sergeant Delima names of possible cellmates, but Perez did not accept them.

Defendant Perez always harassed Plaintiff.  She knocked on his cell door if she worked the 6:00am shift and Plaintiff was in bed.  She pushed Plaintiff's wheelchair far away from his door so Plaintiff had to walk to his wheelchair without help when he needed it.  She never gave

Plaintiff a disability cell with a big enough door to fit his wheelchair inside.   This was discrimination because the ADA cell was taken by Miko, an inmate with a walker, who was of "her people['s] race."   (Id. at 7:13.)    This violated Plaintiff's ADA and Eighth Amendment rights.   Defendants Perez and Munoz are Mexicans, and Plaintiff is a Pacific Islander and Tongan citizen.   Plaintiff's accuser, Miko, is also a Mexican.   Plaintiff is not racist, but they are.   They favor each other and Plaintiff can feel it.   Perez did not speak to Plaintiff the same as she spoke to Nguyen, the accuser.   Plaintiff requested bigger size shoes and for 2 years Perez never helped him.   When Nguyen came she gave Nguyen new shoes in 2 days.   Perez discriminates against other races, mostly immigrants or blacks.   Plaintiff saw it her way.   That's why she intended to get rid of Plaintiff by her own people's race.

Plaintiff complained to defendants C/O Perez and C/O Munoz about his concern that he faced dangers from the cellmates they gave him.   One cellmate had mental problems, one had a live pet rat, one told Plaintiff that defendant Perez wants to put him away or harm him.   Too much complaining about cellmates caused her too much paperwork.   Because of Plaintiff's situation – ADA, disability impairment, use wheelchair – no inmate wants him for a cellmate.   Plaintiff requested from Perez a single cell, but it was denied 2 years in a row by the ICC committee.

Defendants C/O Perez, C/O Munoz, C/O Sims, and C/O Maldonado were all at KVSP during November and December 2018 when the incident occurred.   After the elder abuse by Nguyen, when Plaintiff came back from the hospital, Perez continually harassed him.   She knew he was injured badly and he told her she failed to protect him by her actions.

Defendant C/O Munoz worked at KVSP, mostly during the second watch shift.   Munoz was working on November 17, 2018 when the incident occurred.   Defendant Munoz responded first, filed a false report and conspired to defraud Plaintiff.   After the incident, Munoz continued to harass Plaintiff and denied him due process when he failed to reply to Plaintiff's request for form 22, used to ask for an interview.   Munoz willfully disobeyed the rules.   Munoz caused a violation of Plaintiff's due process rights to a fair hearing at the prison under the Fourteenth Amendment, done out of discrimination.   In a few weeks Munoz moved Plaintiff to the D-3

Building out of intentional hatred.  Plaintiff filed a 602 grievance about the 12th of December 2018.  Plaintiff was almost hurt or killed by another inmate who was placed with Plaintiff by C/O Sims and C/O Maldonado.  Sims and Maldonado intended to aid Perez and Munoz, as an accessory, to move Plaintiff there to finish the assaults.

On December 12, 2018, inmate Bowden, about 40 years old, pulled a knife on Plaintiff and demanded Plaintiff's paperwork.  Plaintiff believes this was set up by defendant Munoz.  Defendant Munoz breached [*sic*] the report on the November 17, 2018 incident, intending to aid the accuser inmate Nguyen.  Through fraud and forgery, Munoz altered a written report with intent to twist the truth, violating Plaintiff's due process rights.  Munoz stated in his report that Plaintiff said, "I did hit Nguyen first" and "I forgive him no bad evil feel [*sic*]."  (Id. at 14:16-18.)  Munoz intended to twist the report to make Plaintiff guilty in the disciplinary hearing.  Plaintiff was found guilty because Munoz stated he was fighting, but there is no evidence and no marks on Nguyen.  To show Plaintiff hit him, the Nurse's report said that on November 17, 2018, Plaintiff said he had no comment.  Plaintiff was unconscious from brain damage and bleeding to his brain, the blood from over 10 punches and kicks from Nguyen's assault.  Plaintiff was down on the floor and Munoz saw him there not fighting.

Munoz acted against Plaintiff's due process rights at Plaintiff's disciplinary hearing.  Munoz worked with defendant C/O Sims to steal Plaintiff's litigation file.  On December 12, 2018, inmate Bowden, Plaintiff's new cellmate, stole Plaintiff's file folder, legal paper, and other personal property – sandal, fan, air foods [*sic*], cosmetics, etc.  Sims and Maldonado got some of Plaintiff's things back.  The folder was empty.  They never charged him [Bowden] with theft, which is a serious rules violation.  They let him go free because it was a set-up.  Sims and Maldonado used forgery and fraud and filed a false report.  Model Penal Code 2:02(a)(i)(ii)(b).

In October 2018, a month before the November 17th incident, Plaintiff was in the Mental Staff office at D-4 building.  He requested a single cell because he was afraid, anxious and depressed worrying about being harmed or killed by a cellmate.  Three in a row, they [cellmates] threatened him because of his race and ADA disability.  Plaintiff asked the mental worker to help him stay single celled.  He refused to help but called Munoz to come to their meeting to explain

to Plaintiff.  Munoz told Plaintiff it was his duty, not the mental department's, but he never helped Plaintiff.  Plaintiff told Munoz about his choice of inmates for his cellmate, but he said it was not possible.  He knew I was worrying for my life but put one cellmate after another with Plaintiff. Perez put one to brutalize Plaintiff with violence and failed to protect Plaintiff.

Defendants fabricated charges to put Plaintiff away because of Plaintiff's 602 grievance against them, violating the First Amendment.  C/O Sims handpicked another inmate to harm Plaintiff on December 12, 2018.  He put inmate Bowden with Plaintiff.  On the same day Bowden threatened Plaintiff with a knife and damaged Plaintiff's records.  Plaintiff told Sims and Maldonado.  They locked Plaintiff in the stinky shower urinal for 3 hours where Plaintiff ate his dinner while Bowden went through Plaintiff's property.  If Plaintiff had stayed with Bowden, Bowden would have killed Plaintiff.  Sims put him in another cell but gave Plaintiff a write-up.

On December 10, 2018, plaintiff was moved to Building D-3 by Perez and Munoz out of retaliation.  They filed a false report that Plaintiff threatened their safety, and also brought an order from the Sergeant to move Plaintiff out of D-4.  This violated their duty and oaths to protect Plaintiff and put Plaintiff in double jeopardy.  They falsely reported that Plaintiff did not accept Bowden in his cell.  Plaintiff did reject Bowden but only after Bowden threatened Plaintiff with a knife.  Plaintiff ran outside and told Sims.  Sims and Maldonado put someone dangerous with Plaintiff to harm him and steal his litigation papers ,and to harass Plaintiff as a favor to Perez and Munoz. Sims locked Plaintiff up in the stinky shower room for 3 hours while Bowden took what he wanted.  Plaintiff lost privileges for TV, hot pot, fan, canteen, and packages for 90 days because of Plaintiff's ADA disability as a wheelchair user with 5 chronic illnesses -- heart disease, liver, prostate, back, and arthritis .  Today, on March 18, 2019, Plaintiff is still there and claims cruel and unusual punishment under the 8th Amendment, 1st Amendment retaliation, and violation of the 14th Amendment for violation of equal protection and due process.

Defendants Sims and Maldonado harassed Plaintiff and failed to protect him from his cellmate Bowden, and tried to put Plaintiff back in the cell, but Plaintiff told them Bowden had threatened him with a knife and demanded Plaintiff's property.  Both officers Sims and Maldonado agreed to put Plaintiff back with Bowden to fight, to put him in the hospital or kill

him.  They told Plaintiff to go back and fight with Bowden.

When C/O Maldonado worked on second watch, with overtime on third watch, he never signed Plaintiff's legal mail or took it, out of retaliation for Plaintiff's litigation work.  On December 10, 2018 he removed Plaintiff to D-8, C status.  He came to Plaintiff's cell and harassed him and mocked his paperwork.  He tried to rush Plaintiff, but Plaintiff cannot lift over 19 pounds under doctor's orders.  He never wanted to help Plaintiff.  Plaintiff packed his stuff, lifted it, and followed Maldonado in his wheelchair to D-8.  It was negligent to put Plaintiff on C-status.  Maldonado violated Plaintiff's right to due process with a false report and supported Perez and Munoz as an accessory.  Plaintiff was sent from D-4 on false charges so that Sims and Maldonado could finish the retaliation for Plaintiff's right to file a grievance under the First Amendment.

As relief, Plaintiff requests a declaration, compensatory and punitive damages, preliminary injunctive relief, equitable relief, and attorney's fees.

## IV.    PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).  "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Id.

7

*///*

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him or her of rights secured by the Constitution or federal law.  Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law").  A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'"  Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).  "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms."  Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743).  This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause."  Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

## A.   Federal Rule of Civil Procedure 8

Plaintiff's Complaint fails to comply with Federal Rules of Civil Procedure 8.  Pursuant to Rule 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678 (citation omitted).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).  While factual allegations are accepted as true, legal conclusions are not. Id.; see also Twombly, 550 U.S. at 556–557; Moss, 572 F.3d at 969.

Plaintiff's Complaint is not a short, plain statement of his claims. His allegations and statement of facts are rambling and difficult to understand.  Plaintiff intersperses his allegations

8

with legal cites and conclusory statements.  Because Plaintiff's Complaint does not clearly and succinctly state what happened, Plaintiff shall be granted leave to amend the Complaint.  Twenty-five pages are more than sufficient for Plaintiff to state his allegations and claims in the First Amended Complaint.  To comply with Rule 8, Plaintiff must clearly and succinctly set forth his allegations, preferably in a chronological order.  Plaintiff should not state the same allegations more than once, or include any case cites or legal analysis in the amended complaint.

### B.   Official Capacity

Plaintiff sues the Defendants in their individual and official capacities. To the extent Plaintiff is attempting to pursue damages claims against the named Defendants in their official capacities, he may not do so.  "The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials in their official capacities."  Aholelei v. Dep't. of Pub. Safety, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted). However, the Eleventh Amendment does not bar suits seeking damages against state officials in their personal capacities.  Hafer v. Melo, 502 U.S. 21, 30 (1991); Porter v. Jones, 319 F.3d 483, 491 (9th Cir. 2003), or suits for injunctive relief brought against state officials in their official capacities, Austin v. State Indus. Ins. Sys., 939 F.2d 676, 680 n.2 (9th Cir. 1991). Thus, Plaintiff may only proceed against Defendants in their individual capacities for monetary damages.

### C.   Eighth Amendment - Failure to Protect

Prison officials have a duty under the Eighth Amendment to protect prisoners from violence at the hands of other prisoners because being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.  Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 28 L.Ed.2d 811 (1994); Clem v. Lomeli, 566 F.3d 1177, 1181 (9th Cir. 2009); Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005).  However, prison officials are liable under the Eighth Amendment only if they demonstrate deliberate indifference to conditions posing a substantial risk of serious harm to an inmate; and it is well settled that deliberate indifference occurs when an official acted or failed to act despite his knowledge of a substantial risk of serious harm.  Farmer, 511 U.S. at 834, 841; Clem, 566 F.3d at 1181;  Hearns, 413 F.3d at 1040.

/// 

"While the Eighth Amendment requires prison officials to provide prisoners with the basic human needs, including reasonable safety, it does not require that the prisoners be comfortable and provided with every amenity." Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982)) overruled on other grounds by Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). A housing assignment may be "restrictive and even harsh," but will not violate the Eighth Amendment unless it "either inflicts unnecessary or wanton pain or is grossly disproportionate to the severity of crimes warranting imprisonment." Rhodes v. Chapman, 452 U.S. 337, 348–49 (1981) (finding inmates had no constitutional right to be housed in single cells). Only where prison officials knew that a housing assignment posed an excessive risk to an inmate's safety will placement with a particular inmate have constitutional implications. Estate of Ford v. Ramirez– Palmer, 301 F.3d 1043, 1050 (9th Cir. 2002).

An inmate has no constitutional right to a particular security classification or housing. See Meachum v. Fano, 427 U.S. 215, 224–25 (1976) (no liberty interest protected by the Due Process Clause is implicated in a prison's reclassification and transfer decisions); see also Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007). Neither the Eighth nor the Fourteenth Amendment endows prisoners with a right to be housed in a particular part of the prison or with a particular inmate. See Meachum v. Fano, 427 U.S. at, 224–25 (no liberty interest in placement in particular facility); Allen v. Purkett, 5 F.3d 1151, 1153 (8th Cir. 1993) (no Due Process right to be housed with compatible inmate); Bjorlin v. Hubbard, No. CIV S–09–1793 2010 WL 457685, *1 (E.D. Cal. Feb. 4, 2010) (same).

Plaintiff claims that defendant Perez failed to protect him from an attack by Plaintiff's cellmate Nguyen, but there are no facts showing that defendant Perez knew of a substantial risk of serious harm to Plaintiff from Nguyen. Nguyen had taken some of Plaintiff's property before and given it to one of Nguyen's friends, and Plaintiff told defendant Perez about the theft but there are no facts showing that defendant Perez was aware of any specific risk of physical harm to Plaintiff from Nguyen. Plaintiff appears to blame Perez because Perez chose Nguyen as

Plaintiff's cellmate, but Plaintiff has not shown that Perez knew there was any risk that Nguyen would attack and harm Plaintiff.

Plaintiff also alleges that defendants Sims and Maldonado placed a cellmate named Bowden with Plaintiff, who allegedly pulled a knife on Plaintiff demanding Plaintiff's paperwork. Defendants Sims and Maldonado got most of the property back and then returned Bowden to Plaintiff as his cellmate.  Plaintiff alleges that defendants Sims and Maldonado were working with defendant Munoz and Perez to have Plaintiff assaulted, but there are no facts supporting this conclusory allegation, and Bowden did not attack or injure Plaintiff.  Plaintiff alleges that sometime before October 2018, three cellmates threatened Plaintiff because of his race and disability, and he asked defendant Munoz if he could remain single-celled; however, Plaintiff does not allege that he informed Defendants of any specific threat of harm that he faced from cellmates Nguyen or Bowden.

Plaintiff's allegations are insufficient to state a cognizable Eighth Amendment claim. Plaintiff has failed to allege plausible facts that any of the Defendants knew of and disregarded an excessive risk to Plaintiff's health or safety from his cellmates.

### D.      Fourteenth Amendment – Due Process - Hearing on RVR

"When protected interests are implicated, the right to some kind of prior hearing is paramount . . . ." Neal v. Shimoda, 131 F.3d 818, 830 (9th Cir. 1997) (quoting Board of Regents of State Colleges v. Roth, 408 U.S. 564, 569-70 (1972)). However, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."  Wolff v. McDonnell, 418 U.S. 539, 556 (1974). With respect to prison disciplinary proceedings, the minimum procedural requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) assistance to the prisoner where the prisoner is illiterate or the issues presented are legally

complex. Id. at 563-71.  As long as the five minimum Wolff requirements are met, due process has been satisfied.  Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994), abrogated on other grounds by Sandin, 515 U.S. 472. In addition, "some evidence" must support the decision of the hearing officer, Superintendent v. Hill, 472 U.S. 445, 455 (1985), and the evidence must have some indicia of reliability, Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987). The "some evidence" standard is not particularly stringent, and the relevant inquiry is whether "there is any evidence in the record that could support the conclusion reached . . . ."  Hill, 472 U.S. at 455-56.

It is unclear from Plaintiff's allegations what rights under the due process were violated at his RVR hearing. Plaintiff claims the charges against him at the hearing were false, but he has not alleged that he was denied any of the five procedural requirements that must be met pursuant to Wolff, listed above.  Thus, Plaintiff's factual allegations fail to establish that his disciplinary proceeding violated his rights to due process.

### E.   Americans with Disabilities Act (ADA) Claim

Title II of the ADA, 42 U.S.C. § 12131 et seq., and § 504 of the Rehabilitation Act, as amended and codified in 29 U.S.C. § 701 et seq. ("RA"), prohibit discrimination on the basis of a disability in the programs, services or activities of a public entity.  Federal regulations require a public entity to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity."  28 C.F.R. § 35.130(b)(7).

The elements of a cause of action under Title II of the ADA are: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.  Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002).  A cause of action under § 504 of the RA essentially

parallels an ADA cause of action.  <u>See</u> <u>Olmstead v. Zimring</u>, 527 U.S. 581, 590 (1999); <u>Duvall v. County of Kitsap</u>, 260 F.3d 1124, 1135 (9th Cir. 2001).

Monetary damages are not available under Title II of the ADA absent a showing of discriminatory intent.  <u>See</u> <u>Ferguson v. City of Phoenix</u>, 157 F.3d 668, 674 (9th Cir. 1998). To show discriminatory intent, a plaintiff must establish deliberate indifference by the public entity. <u>Duvall</u>, 260 F.3d at 1138. Deliberate indifference requires: (1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood.  <u>Id.</u> at 1139.  The first prong is satisfied when the plaintiff identifies a specific, reasonable and necessary accommodation that the entity has failed to provide, and the plaintiff notifies the public entity of the need for accommodation or the need is obvious or required by statute or regulation. <u>Id.</u>  The second prong is satisfied by showing that the entity deliberately failed to fulfill its duty to act in response to a request for accommodation.  <u>Id.</u> at 1139-40.  Punitive damages may not be awarded in suits brought under Title II of the ADA.  <u>Barnes v. Gorman</u>, 536 U.S.181, 189 (2002).

Plaintiff alleges that he is wheelchair ambulatory, which indicates that he is a person with a disability.  With respect to Plaintiff's allegations in the Complaint pertaining to his ADA disability, Plaintiff alleges that: (1) Defendant Perez pushed Plaintiff's wheelchair far away from his door so Plaintiff had to walk to his wheelchair without help when he needed it; (2) Defendant Perez never gave Plaintiff a disability cell with a big enough door to fit his wheelchair inside, and instead gave the ADA cell to Miko, an inmate with a walker, because Miko was Mexican; (3) Plaintiff lost privileges [when found guilty of a rules violation] for TV, hot pot, fan, canteen, and packages for 90 days because of Plaintiff's ADA disability as a wheelchair user with 5 chronic illnesses -- heart disease, liver, prostate, back, and arthritis; and (4) three cellmates threatened him because of his race and ADA disability.

Plaintiff's allegations need more supporting facts showing how he was excluded from participation in or denied the benefits of the prison's services, programs or activities, or was otherwise discriminated against by the prison, by reason of his disability.  Therefore, Plaintiff fails to state a claim for violation of the ADA.

F.    **Equal Protection – Fourteenth Amendment**

Equal protection claims arise when a charge is made that similarly situated individuals are treated differently without a rational relationship to a legitimate state purpose. See San Antonio School District v. Rodriguez, 411 U.S. 1 (1972). Prisoners are protected from invidious discrimination based on race. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Racial segregation is unconstitutional within prisons save for the necessities of prison security and discipline. See Cruz v. Beto, 405 U.S. 319, 321 (1972) (per curiam). Prisoners are also protected from intentional discrimination on the basis of their religion. See Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997). Equal protection claims are not necessarily limited to racial and religious discrimination. See Lee v. City of Los Angeles, 250 F.3d 668, 686-67 (9th Cir. 2001) (applying minimal scrutiny to equal protection claim by a disabled plaintiff because the disabled do not constitute a suspect class); see also Tatum v. Pliler, 2007 WL 1720165 (E.D. Cal. 2007) (applying minimal scrutiny to equal protection claim based on denial of in-cell meals where no allegation of race-based discrimination was made); Hightower v. Schwarzenegger, 2007 WL 732555 (E.D. Cal. March 19, 2008).

In order to state a § 1983 claim based on a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must allege that defendants acted with intentional discrimination against plaintiff, or against a class of inmates which included plaintiff, and that such conduct did not relate to a legitimate penological purpose. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (holding that equal protection claims may be brought by a "class of one"); Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 740 (9th Cir. 2000); Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998); Federal Deposit Ins. Corp. v. Henderson, 940 F.2d 465, 471 (9th Cir. 1991); Lowe v. City of Monrovia, 775 F.2d 998, 1010 (9th Cir. 1985).

Plaintiff states conclusory allegations that he was discriminated against by defendants because of his race and his litigation activities. Plaintiff fails to plead facts indicating that he was purposely discriminated against by any of the Defendants because of his race. A conclusory statement that he was discriminated against because of his race, or by anti-Semitism, is not sufficient to state an equal protection claim.

**G.    Retaliation**

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so."  Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir. 2005). To state a cognizable retaliation claim, Plaintiff must establish a nexus between the retaliatory act and the protected activity.  Grenning v. Klemme, 34 F.Supp.3d 1144, 1153 (E.D. Wash. 2014).

Plaintiff's allegations are conclusory and fail to allege that any of the Defendants knew about Plaintiff's litigation activities and took "adverse action" against Plaintiff because of it, or because of his race.  Moreover, Plaintiff has failed to allege facts for each of the elements of a claim for retaliation.

### H.   Verbal harassment and Threats

Mere verbal harassment or abuse, including the use of racial epithets, does not violate the Constitution and, thus, does not give rise to a claim for relief under 42 U.S.C. § 1983. Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987).  In addition, threats do not rise to the level of a constitutional violation.  Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987). Therefore, any allegations of verbal harassment by any of the Defendants, without more, fail to state a claim under § 1983.

### I.   False Reports/Accusations

The creation of false evidence, standing alone, is not actionable under § 1983. See Hernandez v. Johnston, 833 F.2d 1316, 1319 (9th Cir. 1987) (independent right to accurate prison record has not been recognized); Johnson v. Felker, No. 1:12–cv–02719 GEB KJN (PC), 2013 WL 6243280, at *6 (E.D. Cal. Dec. 3, 2013) ("Prisoners have no constitutionally guaranteed right to be free from false accusations of misconduct, so the mere falsification of a report does not give rise to a claim under section 1983.") (citations omitted). Moreover, "plaintiff cannot

state a cognizable Eighth Amendment violation based on an allegation that defendant[ ] issued a false rule violation against plaintiff." Jones v. Prater, No. 2:10-cv-01381 JAM KJN P, 2012 WL 1979225, at *2 (E.D. Cal. Jun. 1, 2012); see also Youngs v. Barretto, No. 2:16-cv-0276 JAM AC P, 2018 WL 2198707, at *3 (E.D. Cal. May 14, 2019) (noting that issuance of false rules violation report does not rise to the level of cruel and unusual punishment) (citations omitted).

Therefore, Plaintiff fails to state a claim for falsely being accused of a Rules Violation or for false reports by any of the Defendants about Plaintiff's circumstances or conduct.

### J.      Double Jeopardy

Plaintiff claims a violation of double jeopardy by defendants Perez and Munoz when they filed a false report that Plaintiff threatened their safety and also brought an order from the Sergeant to move Plaintiff out of D-4.

The Double Jeopardy Clause precludes "a second prosecution for the same offense," and prevents "the State from 'punishing twice, or attempting a second time to punish criminally, for the same offense.'" Kansas v. Hendricks, 521 U.S. 346, 369, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997), quoting Witte v. United States, 515 U.S. 389, 396, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995).

To the extent Plaintiff is attempting to plead a double jeopardy claim, his federal legal remedy lies in a writ of habeas corpus. When a prisoner challenges the legality or duration of his custody, or raises a constitutional challenge which could entitle him to an earlier release, his sole federal remedy is a writ of habeas corpus. Preiser v. Rodriguez, 411 U.S. 475, 485–86, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); Young v. Kenny, 907 F.2d 874, 875 (9th Cir.1990), cert. denied 11 S.Ct. 1090 (1991).

Therefore, Plaintiff fails to state a claim for double jeopardy.

### K.      Conspiracy

To establish a cognizable claim for conspiracy under 42 U.S.C. § 1983, a plaintiff must allege (1) the existence of an express or implied agreement among the defendants to deprive the plaintiff of his constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement. Avalos v. Baca, 596 F.3d 583, 592 (9th Cir. 2010). To establish a conspiracy, a

plaintiff must allege specific facts showing "an agreement or meeting of the minds to violate constitutional rights. To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002) (internal citations and quotation marks omitted). The mere conclusory statement that defendants "conspired" together is not sufficient to state a cognizable claim. Woodrum v. Woodward Cnty., 866 F.2d 1121, 1126 (9th Cir. 1989).

Here, Plaintiff asserts that defendant Munoz conspired to defraud Plaintiff.  However, Plaintiff has failed to allege any specific facts showing the existence of an agreement, or a meeting of the minds among specified Defendants to deprive Plaintiff of his constitutional rights. Therefore, Plaintiff has not alleged a cognizable claim for conspiracy.

**L.      State Law Claims**

Plaintiff brings claims for fraud, forgery, penal code violations, nuisance, elder abuse, and intentional infliction of emotional distress.  These are all state law claims.  Plaintiff is informed that violation of state law is not sufficient to state a claim for relief under § 1983. Section 1983 does not provide a cause of action for violations of state law.  See Galen v. Cnty. of Los Angeles, 477 F.3d 652, 662 (9th Cir. 2007).  To state a claim under § 1983, there must be a deprivation of federal constitutional or statutory rights.  See Paul v. Davis, 424 U.S. 693 (1976); also see Buckley v. City of Redding, 66 F.3d 188, 190 (9th Cir. 1995); Gonzaga University v. Doe, 536 U.S. 273, 279 (2002).  Although the court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law.  See 28 U.S.C. § 1367.  In this instance, the court fails to find any cognizable federal claims in the Complaint.  Therefore, Plaintiff's state claims fail.

**M.      Mail Tampering**

Prisoners have "'a First Amendment right to send and receive mail,' but prison regulations may curtail that right if the 'regulations are reasonably related to legitimate penological interests.'"  Nordstrom v. Ryan, 856 F. 3d 1265, 1272 (9th Cir. 2017) (quoting Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam)).  However, a temporary delay

or isolated incident of delay or other mail interference without evidence of improper motive does not violate a prisoner's First Amendment rights.  See Crofton v. Roe, 170 F.3d 957, 961 (9th Cir. 1999) (as amended); see Davis v. Goord, 320 F.3d 346, 351 (2d. Cir. 2003);  Smith v. Maschner, 899 F.2d 940, 944 (10th Cir. 1990), affirmed in part by Parks v. Wren, 651 Fed.Appx. 597, 2016 WL 3079709 (9th Cir. June 1, 2016) (affirming dismissal of plaintiff's access-to-courts claim); Watkins v. Curry, 2011 WL 5079532, at *4 (N.D. Cal. Oct. 25, 2011) (finding that an isolated incident of mail mishandling, without evidence that the delay was based on the content of the letter or that the one-year delay was purposeful, fails to show First Amendment violation).

Plaintiff alleges that when C/O Maldonado worked on second watch, with overtime on third watch, he never signed Plaintiff's legal mail or took it, out of retaliation for Plaintiff's litigation work.  This statement is insufficient to state a claim under the First Amendment for mail tampering.  Plaintiff has not alleged facts showing that the interference with his mail was more than an isolated incident, nor has he alleged facts showing that defendant Maldonado acted out of retaliation or other ill intent.  Therefore, Plaintiff fails to state a First Amendment claim for interference with his mail.

### N.     Preliminary Injunctive Relief

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  Winter v. Natural Resources Def. Council, Inc., 555 U.S. 7, 20, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008); Am. Trucking Ass'n v. City of Los Angeles, 554 F.3d 1046, 1052 (9th Cir. 2009).  Id. at 374 (citations omitted).  An injunction may only be awarded upon a clear showing that the plaintiff is entitled to relief.  Id. at 376 (citation omitted) (emphasis added).

Federal courts are courts of limited jurisdiction and in considering a request for preliminary injunctive relief, the court is bound by the requirement that as a preliminary matter, it have before it an actual case or controversy.  City of Los Angeles v. Lyons, 461 U.S. 95, 102, 103 S.Ct. 1660, 1665 (1983); Valley Forge Christian Coll. v. Ams. United for Separation of

Church and State, Inc., 454 U.S. 464, 471, 102 S.Ct. 752, 757-58 (1982).  If the court does not have an actual case or controversy before it, it has no power to hear the matter in question.  Id.

///

In his request for relief at the close of the Complaint, Plaintiff requests preliminary injunctive relief for "ongoing violation of my rights." (ECF No. 1 a 24.)  This request is vague and lacks any clear showing that Plaintiff is entitled to relief.  Without more, the court cannot find that Plaintiff is entitled to preliminary injunctive relief.

## O.   Equitable Relief, Declaratory Relief, and Attorney's Fees

Besides monetary damages, Plaintiff requests a declaration, equitable relief, and attorney's fees.  Plaintiff requests that video cameras be placed at Kern Valley State Prison and other prisons, that an investigation be conducted, and that action be taken against the Defendants.

Any award of equitable relief is governed by the Prison Litigation Reform Act, which provides in relevant part:

> "The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief."  18 U.S.C. § 3626(a)(1)(A).

Neither an investigation, the placing of video cameras at prisons, nor action taken against Defendants would remedy the past violation of Plaintiff's constitutional rights and therefore is not narrowly drawn to correct the alleged past violations.  Based on the nature of the claims at issue in this action, which involve past conduct, Plaintiff is not entitled to equitable relief and is therefore confined to seeking money damages for the violations of his federal rights.

Plaintiff also requests a declaration.  Declaratory relief should be denied because it is subsumed by Plaintiff's damages claim. See Rhodes, 408 F.3d at 565-66 n.8 (because claim for damages entails determination of whether officers' alleged conduct violated plaintiff's rights, the separate request for declaratory relief is subsumed by damages action); see also Fitzpatrick v. Gates, No. CV 00-4191-GAF (AJWx), 2001 WL 630534, at *5 (C.D. Cal. Apr. 18, 2001)

("Where a plaintiff seeks damages or relief for an alleged constitutional injury that has already occurred declaratory relief generally is inappropriate[.]")

With regard to attorney's fees, "[i]n any action or proceeding to enforce a provision of section[] 1983 . . . , the court, in its discretion, may allow the prevailing party . . . reasonable attorney's fees. . . ." 42 U.S.C. § 1988(b).  However, Plaintiff's contention that he is entitled to attorney's fees if he prevails in this case is without merit.  Plaintiff is representing himself in this action.  Because Plaintiff is not represented by an attorney, he is not entitled to recover attorney's fees if he prevails.  See Friedman v. Arizona, 912 F.2d 328, 333 n.2 (9th Cir. 1990), superseded by statute as stated in Warsoldier v. Woodford, 418 F.3d 989 (9th Cir. 2005); Gonzalez v. Kangas, 814 F.2d 1411, 1412 (9th Cir. 1987); see also Rickley v. Cnty. of Los Angeles, 654 F.3d 950, 954 (9th Cir. 2011) ("The Court accordingly adopted a per se rule, categorically precluding an award of attorney's fees under § 1988 to a pro se attorney-plaintiff."

## V.   CONCLUSION AND ORDER

For the reasons set forth above, the court finds that Plaintiff fails to state any cognizable claims in the Complaint against any of the Defendants for violating his constitutional or other federal rights.  Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave to amend when justice so requires."  Therefore, Plaintiff shall be granted leave to amend the complaint.  The court will provide Plaintiff with thirty days to file a First Amended Complaint curing the deficiencies identified above.  Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  **The amended complaint may not exceed 25 pages.**

The amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights. Iqbal, 556 U.S. at 678; Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'"  Iqbal at 678 (quoting Twombly, 550 U.S. at 555).

Plaintiff must demonstrate in his amended complaint how the conditions complained of have resulted in a deprivation of his constitutional rights.  See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  The amended complaint must allege in specific terms how each named defendant is

involved, or how implementation of the underground regulation caused violation of his rights.

Plaintiff may not change the nature of this suit by adding unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

///

Also, Plaintiff is not granted leave to add allegations to the amended complaint of events that occurred after March 28, 2019, the date the original Complaint was filed.

As a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Once an amended complaint is filed, the original complaint no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

The First Amended Complaint should be clearly and boldly titled "FIRST AMENDED COMPLAINT," refer to the appropriate case number, and be an original signed under penalty of perjury.

Accordingly, **IT IS HEREBY ORDERED** that:

1.     Plaintiff's Complaint, filed on March 28, 2019, is dismissed for Plaintiff's failure to state a claim upon which relief may be granted, with leave to amend;

2.     The Clerk's Office shall send Plaintiff a civil rights complaint form;

3.     Within thirty days from the date of service of this order, Plaintiff shall file a First Amended Complaint, **not to exceed 25 pages in length**,  curing the deficiencies in the Complaint identified by the court;

4.     Plaintiff shall caption the amended complaint "First Amended Complaint" and refer to the case number 1:19-cv-00400-NONE-GSA-PC; and

5.     Plaintiff's failure to comply with this order shall result in a recommendation that this action be dismissed for failure to state a claim.

IT IS SO ORDERED.

Dated:   **May 12, 2020**                       **/s/ Gary S. Austin**

UNITED STATES MAGISTRATE JUDGE