UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ETUATE SEKONA,<br><br>            Plaintiff,<br><br>    v.<br><br>R. PEREZ, et al.,<br><br>            Defendants. | 1:19-cv-00400-NONE-GSA-PC<br><br>**ORDER DISMISSING FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM, WITH LEAVE TO AMEND**<br>**(ECF No. 21.)**<br><br>**THIRTY-DAY DEADLINE TO FILE SECOND AMENDED COMPLAINT NOT EXCEEDING 25 PAGES** |

**I.   BACKGROUND**

Etuate Sekona ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983. On March 28, 2019, Plaintiff filed the Complaint commencing this action. (ECF No. 1.) On May 13, 2020, the court dismissed the Complaint for failure to state a claim, with leave to amend. (ECF No. 15.) On August 31, 2020, Plaintiff filed the First Amended Complaint which is now before the court for screening. 28 U.S.C. § 1915. (ECF No. 21.)

**II.   SCREENING REQUIREMENT**

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek

1

monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  While factual allegations are accepted as true, legal conclusions are not.  Id.  The mere possibility of misconduct falls short of meeting this plausibility standard.  Id.

### III.   SUMMARY OF FIRST AMENDED COMPLAINT

Plaintiff is presently incarcerated at Kern Valley State Prison (KVSP) in Delano, California, in the custody of the California Department of Corrections and Rehabilitation, where the events at issue in the First Amended Complaint allegedly occurred.  Plaintiff names as defendants Correctional Officer (C/O) R. Perez, C/O L. Munoz, C/O C. Sims, and C/O Maldonado (collectively, "Defendants").  Plaintiff's allegations follow:

Plaintiff is a 70-year-old man in poor health who uses a wheelchair.  He is a Pacific South Islander from Tonga and speaks English as a second language.  Plaintiff came to KVSP in November 2016.  He was housed in Building D8 where Defendants C/O Perez and C/O Munoz worked.  He had been on single-cell status, but the ICC Committee changed that.  Plaintiff told Defendants Perez and Munoz that before coming to KVSP he was attacked in his cell by his prior cellmate and seriously injured.

In July 2018, Plaintiff wrote to the supervisor, Sgt. Delima [not a defendant], about defendant Perez placing cellmates with Plaintiff without Plaintiff's consent. Sgt. Delima ordered Defendants Perez and Munoz to allow Plaintiff to choose his own cellmate. Plaintiff made several requests to Defendants Perez and Munoz for particular cellmates, but they denied the requests out of retaliation. Plaintiff let the Sergeant know.

Plaintiff let Defendant Perez know that prior cellmates had threatened him. For two years, she (Perez) took care of Plaintiff in Building D8. Plaintiff wrote multiple requests concerning his safety and spoke with Defendant Perez at the office during the first or second week of November 2018. One of his cellmates had a live mouse and made wine in the cell. Plaintiff's life was in danger. Defendant Perez hated Plaintiff because in October 2018, she overheard Plaintiff's phone call with an A.G. lawyer to settle Plaintiff's case from another prison, MCSP (Mule Creek State Prison). Defendant Perez went to Building D3 and hand-picked a young, strong inmate named Nguyen, who intended to harass and harm Plaintiff. Defendant Perez told Plaintiff he had no right to refuse the cellmate. Nguyen stole Plaintiff's food and property and gave it away. Plaintiff told Defendant Perez. On November 17, 2018, Plaintiff was attacked by Nguyen, causing Plaintiff to suffer brain damage. Plaintiff was hospitalized and is lucky to be alive. Defendant Munoz saw the attack and filed a false report that resulted in a guilty finding against Plaintiff, and nine painful months on C-status. Plaintiff's pot, TV, fan, and canteen rights were taken away.

Plaintiff contends that maybe the November 17, 2018 assault would have been prevented if Defendants Perez and Munoz had followed their Sergeant's order. "But they [*sic*] 'adverse action' for my protection order and retaliation because of my grievances and filed litigation on them; because failure to protected [*sic*] conduct, and that such action; because Perez and Munoz knew my legal in the other prison from heard [*sic*] my phoned [*sic*] and lots of legal mails. And they took retaliation because of my protected conduct chilled exercise of 1st Amendment rights." (ECF No. 21 at 6:21-28.)

On December 10, 2018, Defendant Perez ordered Plaintiff moved to Building D3, where Defendants Sims and Maldonado worked. They all conspired in this action. Defendants Sims

and Maldonado ordered inmate Bowden to be Plaintiff's cellmate. Bowden threatened Plaintiff with a knife to force Plaintiff to give Bowden his legal paperwork. Plaintiff filed 602 appeals and told Defendants Sims and Maldonado, but they told Plaintiff to go back and fight with him. They wheeled Plaintiff back to the cell. Plaintiff said he could not fight. They acted with deliberate indifference. They knew if Plaintiff went back to the cell there was a risk that Bowden would use the knife on Plaintiff. Plaintiff had already been assaulted twice before. Defendants Sims and Maldonado failed to protect Plaintiff and wanted Plaintiff to suffer and be punished because of his grievance and litigation. When Plaintiff failed to follow their order, Defendants Sims and Maldonado wrote Plaintiff up with a 115 form charging him with refusing to accept Bowden as a cellmate. Defendant Sims placed Plaintiff in the shower room so Bowden had time to take Plaintiff's legal documents and other property. Defendant Sims brought back Plaintiff's fan and other property, but not his legal documents. The 115 they filed was false, meant to put Plaintiff away for a long time, for six months at the worst place on C-status.

As relief, Plaintiff requests monetary damages and a declaration that his federal rights were violated.

## IV.     PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006). "To the extent that the violation of a state law

amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Id.

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him or her of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

### A. Eighth Amendment - Failure to Protect

Prison officials have a duty under the Eighth Amendment to protect prisoners from violence at the hands of other prisoners because being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society. Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 28 L.Ed.2d 811 (1994); Clem v. Lomeli, 566 F.3d 1177, 1181 (9th Cir. 2009); Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005). However, prison officials are liable under the Eighth Amendment only if they demonstrate deliberate indifference to conditions posing a substantial risk of serious harm to an inmate; and it is well settled that deliberate indifference occurs when an official acted or failed to act despite his knowledge of a substantial risk of serious harm. Farmer, 511 U.S. at 834, 841; Clem, 566 F.3d at 1181; Hearns, 413 F.3d at 1040.

"While the Eighth Amendment requires prison officials to provide prisoners with the basic human needs, including reasonable safety, it does not require that the prisoners be comfortable and provided with every amenity." Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982)), overruled on other grounds by Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). A housing assignment may be "restrictive and even harsh," but will not violate the Eighth Amendment unless it "either inflicts unnecessary or wanton pain or is grossly disproportionate to the severity of crimes warranting imprisonment." Rhodes v. Chapman, 452 U.S. 337, 348–49 (1981) (finding inmates had no constitutional right to be housed in single cells). Only where prison officials knew that a housing assignment posed an excessive risk to an inmate's safety will placement with a particular inmate have constitutional implications. Estate of Ford v. Ramirez– Palmer, 301 F.3d 1043, 1050 (9th Cir. 2002).

An inmate has no constitutional right to a particular security classification or housing. See Meachum v. Fano, 427 U.S. 215, 224–25 (1976) (no liberty interest protected by the Due Process Clause is implicated in a prison's reclassification and transfer decisions); see also Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007). Neither the Eighth nor the Fourteenth Amendment endows prisoners with a right to be housed in a particular part of the prison or with a particular inmate. See Meachum v. Fano, 427 U.S. at 224–25 (no liberty interest in placement in particular facility); Allen v. Purkett, 5 F.3d 1151, 1153 (8th Cir. 1993) (no Due Process right to be housed with compatible inmate); Bjorlin v. Hubbard, No. CIV S–09–1793 2010 WL 457685, *1 (E.D. Cal. Feb. 4, 2010) (same).

Plaintiff claims that Defendant Perez failed to protect him from an attack by Plaintiff's cellmate Nguyen, but there are no facts showing that Defendant Perez knew of a substantial risk of serious harm to Plaintiff from Nguyen. Plaintiff alleges that Defendant Perez knew that Plaintiff had been attacked by cellmates in the past, but that does not show that she (Perez) was aware of any risk of physical harm to Plaintiff by his cellmate Nguyen. Plaintiff blames Defendant Perez because Perez chose Nguyen as Plaintiff's cellmate. Plaintiff alleges that before Nguyen attacked him, Plaintiff told Perez that Nguyen had taken his property, but this does not show that Perez knew of an excessive risk that Nguyen would attack and harm Plaintiff.

Therefore, Plaintiff fails to state a claim against Defendant Perez for failing to protect him from the attack by Nguyen.

In addition, Plaintiff finds fault with Defendants Perez and Munoz for not complying with the Sergeant's order to allow Plaintiff to choose his own cellmate, but Plaintiff has not done more than speculate that he (Plaintiff) would have choosen better cellmates.  Thus, the mere fact that Defendants Perez and Munoz chose not to allow Plaintiff to choose his own cellmates does not make them liable for failing to protect Plaintiff.

On the other hand, Plaintiff may be able to state a claim against Defendants Sims and Maldonado for taking Plaintiff back to his cell and telling him to fight with inmate Bowdon. Plaintiff's allegations do not state sufficient facts about the knife Bowden threatened Plaintiff with.  How did Plaintiff know Bowden had a knife?  When and how did Defendants find out about the knife, and how did Plaintiff know they knew about it?  Were Defendants aware that Bowden still had the knife when they told Plaintiff to go back and fight with Bowden?  What happened to the knife?  Also, Plaintiff alleges that Defendants Sims and Maldonado conspired with Defendant Munoz and Perez to cause harm to Plaintiff, but there are no facts supporting this conclusory allegation.  Plaintiff shall be granted leave to file an amended complaint to add facts about the knife, Defendants' knowledge about the knife, and how Plaintiff knew that Defendants conspired with each other.

Based on the foregoing, the court finds that Plaintiff fails to state a claim against any of the Defendants for failing to protect him or for conspiring together to violate his rights.

**B.    Retaliation**

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so."  Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson,

7

408 F.3d 559, 567–68 (9th Cir. 2005). To state a cognizable retaliation claim, Plaintiff must establish a nexus between the retaliatory act and the protected activity. Grenning v. Klemme, 34 F.Supp.3d 1144, 1153 (E.D. Wash. 2014).

Plaintiff fails to state a retaliation claim because he fails to make the required connection between adverse actions by Defendants Perez and Munoz and Plaintiff's protected First Amendment activities. Plaintiff alleges that Defendants Perez and Munoz overheard Plaintiff discussing a settlement in one of Plaintiff's cases, causing Perez to hate Plaintiff. Plaintiff also filed grievances and lawsuits. Plaintiff claims that out of retaliation for these protected First Amendment activities, Defendants Perez and Munoz refused to assign cellmates for Plaintiff that Plaintiff asked for, and that Defendant Perez assigned inmate Nguyen as Plaintiff's cellmate. Plaintiff has not shown that adverse actions were taken against him *because* of his activities. Moreover, Plaintiff has failed to allege facts for all of the five elements of a claim for retaliation. Therefore, Plaintiff fails to state a claim for retaliation.

### C. False Reports/Accusations

The creation of false evidence, standing alone, is not actionable under § 1983. See Hernandez v. Johnston, 833 F.2d 1316, 1319 (9th Cir. 1987) (independent right to accurate prison record has not been recognized); Johnson v. Felker, No. 1:12–cv–02719 GEB KJN (PC), 2013 WL 6243280, at *6 (E.D. Cal. Dec. 3, 2013) ("Prisoners have no constitutionally guaranteed right to be free from false accusations of misconduct, so the mere falsification of a report does not give rise to a claim under section 1983.") (citations omitted). Moreover, "plaintiff cannot state a cognizable Eighth Amendment violation based on an allegation that defendant[ ] issued a false rule violation against plaintiff." Jones v. Prater, No. 2:10-cv-01381 JAM KJN P, 2012 WL 1979225, at *2 (E.D. Cal. Jun. 1, 2012); see also Youngs v. Barretto, No. 2:16-cv-0276 JAM AC P, 2018 WL 2198707, at *3 (E.D. Cal. May 14, 2019) (noting that issuance of false rules violation report does not rise to the level of cruel and unusual punishment) (citations omitted).

Therefore, Plaintiff fails to state a claim for falsely being accused of a Rules Violation or for false reports by any of the Defendants about Plaintiff's circumstances or conduct.

///

**D.     Declaratory Relief**

Besides monetary damages, Plaintiff requests a declaration that his federal rights were violated. Declaratory relief should be denied because it is subsumed by Plaintiff's damages claim. See Rhodes, 408 F.3d at 565-66 n.8 (because claim for damages entails determination of whether officers' alleged conduct violated plaintiff's rights, the separate request for declaratory relief is subsumed by damages action); see also Fitzpatrick v. Gates, No. CV 00-4191-GAF (AJWx), 2001 WL 630534, at *5 (C.D. Cal. Apr. 18, 2001) ("Where a plaintiff seeks damages or relief for an alleged constitutional injury that has already occurred declaratory relief generally is inappropriate[.]")

**V.     CONCLUSION AND RECOMMENDATIONS**

For the reasons set forth above, the court finds that Plaintiff fails to state any cognizable claims in the First Amended Complaint against any of the Defendants for violating his constitutional or other federal rights. Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave to amend when justice so requires." Therefore, Plaintiff shall be granted leave to amend the complaint. The court will provide Plaintiff with thirty days to file a Second Amended Complaint curing the deficiencies identified above. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). **The amended complaint may not exceed 25 pages.**

The amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights. Iqbal, 556 U.S. at 678; Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Iqbal at 678 (quoting Twombly, 550 U.S. at 555).

Plaintiff must demonstrate in his amended complaint how the conditions complained of have resulted in a deprivation of his constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The amended complaint must allege in specific terms how each named defendant is involved.

Plaintiff may not change the nature of this suit by adding unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Also, Plaintiff is not granted leave to add allegations to the amended complaint of events that occurred after March 28, 2019, the date the original Complaint was filed.

As a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

The Second Amended Complaint should be clearly and boldly titled "SECOND AMENDED COMPLAINT," refer to the appropriate case number, and be an original signed under penalty of perjury.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff's First Amended Complaint, filed on August 31, 2020, is dismissed for Plaintiff's failure to state a claim upon which relief may be granted, with leave to amend;
2. The Clerk's Office shall send Plaintiff a civil rights complaint form;
3. Within thirty days from the date of service of this order, Plaintiff shall file a Second Amended Complaint curing the deficiencies in the First Amended Complaint identified by the court;
4. Plaintiff shall caption the amended complaint "Second Amended Complaint" and refer to the case number 1:19-cv-00400-NONE-GSA-PC; and
5. Plaintiff's failure to comply with this order shall result in a recommendation that this action be dismissed for failure to state a claim.

IT IS SO ORDERED.

Dated:   **September 8, 2020**                    **/s/ Gary S. Austin**
                                                                  UNITED STATES MAGISTRATE JUDGE