# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ETUATE SEKONA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>R. PEREZ, et al.,<br><br>　　　　Defendants. | **1:19-cv-00400-NONE-GSA-PC**<br><br>**ORDER DISMISSING SECOND AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM, WITH LEAVE TO AMEND**<br>**(ECF No. 32.)**<br><br>**THIRTY-DAY DEADLINE TO FILE THIRD AMENDED COMPLAINT NOT EXCEEDING 25 PAGES** |

**I.　BACKGROUND**

Etuate Sekona ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983. On March 28, 2019, Plaintiff filed the Complaint commencing this action. (ECF No. 1.) On May 13, 2020, the court dismissed the Complaint for failure to state a claim, with leave to amend. (ECF No. 15.) On August 31, 2020, Plaintiff filed the First Amended Complaint. (ECF No. 21.) On September 8, 2020, the court dismissed the First Amended Complaint for failure to state a claim, with leave to amend. (ECF

No. 23.) On April 21, 2021, Plaintiff filed the Second Amended Complaint which is now before the court for screening. 28 U.S.C. § 1915. (ECF No. 32.)

## II. SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). While factual allegations are accepted as true, legal conclusions are not. Id. The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

## III. SUMMARY OF SECOND AMENDED COMPLAINT[1]

Plaintiff is presently incarcerated at Kern Valley State Prison (KVSP) in Delano, California, in the custody of the California Department of Corrections and Rehabilitation where

---

[1] The court has attempted to set forth Plaintiff's allegations in chronological order in an effort to clarify when the events occurred.

2

the events at issue in the Second Amended Complaint allegedly occurred.  Plaintiff names as defendants Correctional Officer (C/O) R. Perez, C/O L. Munoz, C/O C. Sims, C/O Maldonado, and Lieutenant Potelo (collectively, "Defendants").  Plaintiff's allegations follow:

Plaintiff is a 70-year-old man in poor health who uses a wheelchair.  He is a Pacific South Islander from Tonga and speaks English as a second language.

On January 19, 2016, Scott Kernan [not a defendant], Secretary of State Prisons, sent a memorandum to the Associate Directors, Division of Adult Institutions, about inmate housing assignments stating that those with a history of in-cell assaults and violence shall be placed on single-cell status for safety and security, and that wardens shall ensure 60 days of training on this policy.

In November 2016, Plaintiff was transferred from Mule Creek State Prison to KVSP. Plaintiff had been seriously assaulted by his cellmate at Mule Creek State Prison and had a concussion.  Plaintiff was highly sensitive, paranoid and worried about the possibility of another assault.  He was housed in Building D8 where Defendants C/O Perez and C/O Munoz worked. He had been on single-cell status, but the ICC Committee changed that in 2018.  Plaintiff told Defendants Perez and Munoz that before coming to KVSP he was attacked in his cell by his prior cellmate and was seriously injured.

In January 2018, Plaintiff was taken off single-cell status by the ICC Committee.

In July 2018, Plaintiff wrote to supervising Sergeant Delima [not a defendant], and Delima ordered Defendants to let Plaintiff choose his own cellmate.  However, Defendants denied Plaintiff's requests out of retaliation for Plaintiff's litigation activity.  Defendants failed to protect Plaintiff from assaults in his cell by cellmates.

In August 2018, mental health staff told Defendant Munoz about Plaintiff's fear of assaults from cellmates. Defendants Perez and Munoz overheard Plaintiff discussing a settlement in one of his cases in their office.  After that they looked for any way to put Plaintiff away, and conspired with Defendant Sims to continue assaults on Plaintiff in Building D3.  Defendants Perez and Munoz refused to follow their boss's recommendation.  They chose inmate Nguyen, a 20 year old gang member, and set Nguyen up to harm Plaintiff because Plaintiff had written to

Sergeant Delima about their failure to allow Plaintiff to select his own cellmate.  Defendants Perez and Munoz wanted to harm Plaintiff because of his litigation activities and also because Plaintiff's cry for safety caused them lots of work.  Defendant Perez told Plaintiff that she would choose a good cellmate for him, and then she went to Defendant Sims in Building D3 and picked inmate Nguyen, a 20 year old Asian gang member who was in prison for life for murder.  Plaintiff did not have a right to refuse this cellmate.

The first week of November 2018, Plaintiff was assigned inmate Nguyen as his cellmate. Inmate Nguyen harassed Plaintiff and stole his property -- foods, packages, and clothes.  Plaintiff reported it to Defendants Perez and Munoz but they did nothing.  Plaintiff spoke to Defendant Perez at the office before the November 17th attack because his cellmate had a live mouse in the cell and made drinks in the cell.  Defendant Perez did not like Plaintiff because he complained too much and filed lawsuits and 602 prison grievances.  Defendant Perez told Plaintiff she didn't like inmates filing lawsuits.

On November 17, 2018, inmate Nguyen assaulted Plaintiff, punched him in the head, and kicked him.  Plaintiff was hospitalized for 2 days with brain damage and bleeding in his brain for 6 months.  Defendant Munoz blamed Plaintiff for the assault.  A fraudulent report by Defendant Munoz said that Plaintiff confessed to hitting Nguyen first.  Defendant Munoz wanted to put Plaintiff away for a long time, 6 months on C-status.   Plaintiff says he was not first to hit inmate Nguyen.  It was Defendant Munoz's word against Plaintiff's.  Defendant Munoz gave all of Plaintiff's property to Nguyen.

Since the assault, Plaintiff's brain is still affected.  The multiple punches to his head caused headaches and dizziness.  Defendant Perez retired after the incident.  Three or four times after this, Plaintiff was assaulted again on his head.

On December 10, 2018, Defendants Perez and Munoz conspired with Defendants Sims and Maldonado to move Plaintiff to Building D3 where Sims and Maldonado worked.  These four Defendants were all members of the Green Wall gang at KVSP.  They retaliated against inmates who filed lawsuits against correctional officers.  They hired inmates to do their dirty
///

work. All of the Defendants knew about Plaintiff's lawsuits. Inmates Nguyen and Bowden, who Defendants hired to assault Plaintiff, were both in Building D3.

On December 12, 2018, Defendants placed inmate Bowden, a member of the Black Gloria Family gang, with Plaintiff in his cell. Inmate Bowden threatened Plaintiff with a knife to take Plaintiff's legal papers. When the cell door opened, Plaintiff ran to Defendants Sims and Maldonado and told them about the incident. The Defendants told Plaintiff to go back and fight with inmate Bowden, and they never searched for the knife or protected Plaintiff. Defendants Munoz and Sims both filed fraudulent 115 reports that said Plaintiff failed to follow an order, and Plaintiff was found guilty. Plaintiff did not accept Bowden into his cell. Instead Bowden was already inside the cell, threatened Plaintiff with a knife, and stole Plaintiff's property.

There were two hearings, one for Munoz's 115 report in December 2018 and one for Sims's 115 report in January 2019. Defendant Lieutenant Potelo was the senior hearing officer. At both hearings, Defendant Potelo refused to call witnesses. Defendant Sims lied at Plaintiff's disciplinary hearing, to put Plaintiff away for 6 months in the worst C-status, with no hot pot, television, fan, or canteen, in violation of due process. Defendants Sims and Munoz both lied, retaliating against Plaintiff for his protected activity – litigation and grievances against them. Defendant Sims told Plaintiff later that he knows how to put away an inmate who files lawsuits.

Now, Plaintiff is single-celled because of Covid-19 and ADA old age. Plaintiff would rather die from Covid than be assaulted by a cellmate.

As relief, Plaintiff requests monetary damages and a declaration that his federal rights were violated.

**IV.  PLAINTIFF'S CLAIMS**

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Id.

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him or her of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

### A.   Eighth Amendment - Failure to Protect

Prison officials have a duty under the Eighth Amendment to protect prisoners from violence at the hands of other prisoners because being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society. Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 28 L.Ed.2d 811 (1994); Clem v. Lomeli, 566 F.3d

1177, 1181 (9th Cir. 2009); Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005). However, prison officials are liable under the Eighth Amendment only if they demonstrate deliberate indifference to conditions posing a substantial risk of serious harm to an inmate; and it is well settled that deliberate indifference occurs when an official acted or failed to act despite his knowledge of a substantial risk of serious harm. Farmer, 511 U.S. at 834, 841; Clem, 566 F.3d at 1181; Hearns, 413 F.3d at 1040.

"While the Eighth Amendment requires prison officials to provide prisoners with the basic human needs, including reasonable safety, it does not require that the prisoners be comfortable and provided with every amenity." Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982)), overruled on other grounds by Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). A housing assignment may be "restrictive and even harsh," but will not violate the Eighth Amendment unless it "either inflicts unnecessary or wanton pain or is grossly disproportionate to the severity of crimes warranting imprisonment." Rhodes v. Chapman, 452 U.S. 337, 348–49 (1981) (finding inmates had no constitutional right to be housed in single cells). Only where prison officials knew that a housing assignment posed an excessive risk to an inmate's safety will placement with a particular inmate have constitutional implications. Estate of Ford v. Ramirez–Palmer, 301 F.3d 1043, 1050 (9th Cir. 2002).

An inmate has no constitutional right to a particular security classification or housing. See Meachum v. Fano, 427 U.S. 215, 224–25 (1976) (no liberty interest protected by the Due Process Clause is implicated in a prison's reclassification and transfer decisions); see also Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007). Neither the Eighth nor the Fourteenth Amendment endows prisoners with a right to be housed in a particular part of the prison or with a particular inmate. See Meachum, 427 U.S. at 224–25 (no liberty interest in placement in particular facility); Allen v. Purkett, 5 F.3d 1151, 1153 (8th Cir. 1993) (no Due Process right to be housed with compatible inmate); Bjorlin v. Hubbard, No. CIV S–09–1793 2010 WL 457685, *1 (E.D. Cal. Feb. 4, 2010) (same).

Plaintiff fails state a cognizable claim for failure to protect him under the Eighth Amendment.

Initially, the fact that Plaintiff was taken off single-cell status is too attenuated to show a failure to protect Plaintiff.

Next, Plaintiff claims that Defendant Perez failed to protect him from an attack by Plaintiff's cellmate Nguyen, an alleged gang member, but presently there is a scarcity of facts showing that Defendant Perez knew of a substantial risk of serious harm to Plaintiff from Nguyen. Even though, as Plaintiff alleges, Nguyen was a gang member and placed in Plaintiff's cell in the first week of November 2019, the attack occurring later that same month, there is little to support the assertion that defendants were aware of a danger posed by this cellmate selection. Plaintiff alleges that Defendant Perez knew that Plaintiff had been attacked by cellmates in the past, but that does not show that she (Perez) was aware of any risk of physical harm to Plaintiff by his cellmate Nguyen. Plaintiff blames Defendant Perez because Perez chose Nguyen as Plaintiff's cellmate. Plaintiff alleges that before Nguyen attacked him, Plaintiff told Perez that Nguyen had taken his property, but this does not show that Perez knew of an excessive risk that Nguyen would attack and harm Plaintiff. Currently therefore, Plaintiff fails to state a claim against Defendant Perez for failing to protect him from the attack by Nguyen.

In addition, Plaintiff finds fault with Defendants Perez and Munoz for not complying with the Sergeant's order to allow Plaintiff to choose his own cellmate, but Plaintiff has done no more than speculate that he (Plaintiff) would choose better cellmates. Thus, the mere fact that Defendants Perez and Munoz chose not to allow Plaintiff to choose his own cellmate does not make them liable for failing to protect Plaintiff.

Plaintiff may, however, be able to state a failure to protect claim against Defendants Sims and Maldonado. Here, Plaintiff asserts that in December 2018 he was assigned a new cellmate named Bowden. That on or around the 18th of that month Bowden threatened Plaintiff with a knife and upon running from his cell Plaintiff informed defendants Sims and Maldonado about the event, yet they replied that he should go back into his cell and fight inmate Bowden. First, it is unclear which of the two named defendants instructed Plaintiff to fight with Bowden, but more importantly is whether there actually existed a continuing a threat of harm to Plaintiff by Bowden

at the time Plaintiff was instructed to return to his cell. Plaintiff needs to provide further facts in this regard.

Thus, based on the foregoing, the court finds that Plaintiff fails to state a claim against any of the Defendants for failing to protect him.

### B.  Retaliation

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir. 2005). To state a cognizable retaliation claim, Plaintiff must establish a nexus between the retaliatory act and the protected activity. Grenning v. Klemme, 34 F.Supp.3d 1144, 1153 (E.D. Wash. 2014).

In the Second Amended Complaint, Plaintiff makes several allegations that he was retaliated against. He alleges that "[u]pon information and belief," defendants Perez, Munoz, Sims, and Maldonado retaliated against inmates who filed lawsuits against correctional officers, and that all of the Defendants knew Plaintiff's legal lawsuits, (ECF No. 32 at 4); that defendant Perez removed Plaintiff to Building D3 because of his legal work, (Id. at 5); that defendant Munoz knew Plaintiff's history of assaults and also that Plaintiff's lawsuit was still pending in Court, (Id. at 7:12-13); that Defendants denied Plaintiff's request to choose his own cellmate out of retaliation, and they knew about his lawsuit, (Id. at 8:23-25); that defendant Perez chose a gang member to be Plaintiff's cellmate because Plaintiff had written to Sergeant Dilma about defendant Perez's and Munoz's failure to follow Sgt. Dilma's order, (Id. at 10:4-14); that Defendants Perez and Munoz wanted to hurt Plaintiff because of his litigation, (Id. at 10:17-20); that defendant Perez told Plaintiff she didn't like inmates who filed lawsuits, and she would do something to cause them to suffer more, (Id. at 11:15-20); and that Defendants Sims and Munoz

lied on their 115 reports out of retaliation against Plaintiff's litigation and grievances. (Id. at 14:23-28.)

None of Plaintiff's factual allegations sufficiently show the required *connection or nexus* between adverse actions by any of the Defendants and Plaintiff's protected First Amendment activities. Plaintiff has not shown, other than by speculation, that adverse actions were taken against him *because* of his activities. Moreover, Plaintiff has not identified any of his lawsuits or grievances, when they were filed, or what they alleged that might cause Defendants to retaliate against him. Plaintiff also fails to allege how the Defendants knew about his litigation or how he knows that they knew. Plaintiff has failed to allege facts to satisfy all five of the elements of a retaliation claim. Therefore, Plaintiff fails to state a claim for retaliation.

### C. Conspiracy

Conspiracy under § 1983 requires proof of "an agreement or meeting of the minds to violate constitutional rights," Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002) (internal quotation marks omitted) (quoting United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989)), and that an "'actual deprivation of his constitutional rights resulted from the alleged conspiracy,'" Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, 866 F.2d 1121, 1126 (9th Cir. 1989) ). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" Franklin, 312 F.3d at 441 (quoting United Steelworkers, 865 F.2d at 1541). A plaintiff must allege facts with sufficient particularity to show an agreement or a meeting of the minds to violate the plaintiff's constitutional rights. Miller v. Cal. Dep't of Soc. Servs., 355 F.3d 1172, 1177 n.3 (9th Cir. 2004) (citing Woodrum, 866 F.2d at 1126). The mere statement that defendants "conspired" or acted "in retaliation" is not sufficient to state a claim. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).

The Ninth Circuit requires a plaintiff alleging a conspiracy to violate civil rights to "state specific facts to support the existence of the claimed conspiracy." Olsen v. Idaho State Bd. of

Med., 363 F.3d 916, 929 (9th Cir. 2004) (citation and internal quotation marks omitted) (discussing conspiracy claim under § 1985); Burns v. County of King, 883 F.2d 819, 821 (9th Cir. 1989) ("To state a claim for conspiracy to violate one's constitutional rights under section 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy." (citation omitted) ).

Plaintiff alleges that Defendants Sims and Maldonado conspired with Defendant Munoz and Perez to cause harm to Plaintiff, but Plaintiff adds no facts supporting this allegation. Plaintiff also alleges that after Defendants Perez and Munoz overheard Plaintiff discussing a settlement in one of his cases in their office, they looked for any way to put Plaintiff away and conspired with Defendant Sims to continue assaults on Plaintiff in Building D3. Plaintiff's allegations of conspiracy under § 1983 fail to state a claim because his allegations are conclusory and merely speculative. Alleging that Defendants "conspired" is a legal conclusion and is not sufficient to state a claim. Plaintiff does not provide sufficiently specific facts showing that any of the defendants had an agreement to retaliate against him, or otherwise violate his constitutional rights. There is scarcity of facts demonstrating any agreement between any of the Defendants. Therefore, Plaintiff fails to state a claim for conspiracy.

### C.  Due Process – C-Status Segregation

Plaintiff alleges that he was placed in C-status segregation without receiving the process required under the Fourteenth Amendment. The Due Process Clause does not create a liberty interest in remaining in the general population or being free from administrative segregation. Hewitt v. Helms, 459 U.S. 460, 466–67 (1983); Toussaint v. McCarthy, 801 F.2d 1080, 1091 (9th Cir. 1985), abrogated in part on other grounds by Sandin, 515 U.S. 472. Administrative segregation is the type of confinement that should be reasonably anticipated by inmates at some point in their incarceration. Toussaint, 801 F.2d at 1091 (quoting Hewitt, 459 U.S. at 468). However, a state may a create liberty interest which would be protected by the Due Process Clause. Sandin, 515 U.S. at 483–84. A prisoner has a liberty interest protected by the Due Process Clause only where the restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Keenan, 83 F.3d at 1088 (quoting Sandin, 515

U.S. at 484).

Plaintiff alleges that Defendants put him away for 6 months in the worst C-status, with no hot pot, television, fan, or canteen, in violation of due process. Plaintiff has not described conditions in C-status that rise to the level of atypical and significant hardship in relation to the ordinary incidents of prison life. Being forced to live without a hot pot, television, fan, or canteen for six months does not equate to an atypical and significant hardship. The Ninth Circuit has concluded that prisoners have no liberty interest in remaining free from administrative segregation or solitary confinement. See May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997). In Toussaint, the Ninth Circuit held that California's prison regulations which govern the removal and segregation decisions, do not create a liberty interest. Toussaint, 801 F.2d at 1097–98. Such regulations are procedural requirements that, even if mandatory, do not raise a constitutionally cognizable liberty interest. Id. at 1098. Therefore, Plaintiff has not shown that his protected interests were implicated by the discipline he was subject to because of the guilty findings at his hearings.

"When protected interests are implicated, the right to some kind of prior hearing is paramount . . . ." Neal v. Shimoda, 131 F.3d 818, 830 (9th Cir. 1997) (quoting Board of Regents of State Colleges v. Roth, 408 U.S. 564, 569-70 (1972)). However, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). With respect to prison disciplinary proceedings, the minimum procedural requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. Id. at 563-71. As long as the five minimum Wolff requirements are met, due process has been satisfied. Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994), abrogated on other

grounds by Sandin, 515 U.S. 472. In addition, "some evidence" must support the decision of the hearing officer, Superintendent v. Hill, 472 U.S. 445, 455 (1985), and the evidence must have some indicia of reliability, Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987). The "some evidence" standard is not particularly stringent, and the relevant inquiry is whether "there is any evidence in the record that could support the conclusion reached . . . ." Hill, 472 U.S. at 455-56.

Plaintiff claims the charges against him at the disciplinary hearing were false and that he was not allowed to call witnesses, but he has not shown that he had a liberty interest in remaining out of the C-status segregation.  Thus, Plaintiff's factual allegations fail to establish that his disciplinary proceeding violated his rights to due process.

To the extent that Plaintiff seeks to have his guilty findings overturned or any of the penalties against him reversed or expunged, he cannot do so in this § 1983 action.  Moreover, when seeking damages for an allegedly unconstitutional conviction or imprisonment, "a § 1983 plaintiff must first show that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254."  Heck v. Humphrey, 512 U.S. 477, 487-88 (1994).  "A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." Id. at 488.  Here, Plaintiff has not alleged that either of the guilty findings against him were reversed or otherwise invalidated.

### E.  False Reports/Accusations

The creation of false evidence, standing alone, is not actionable under § 1983. See Hernandez v. Johnston, 833 F.2d 1316, 1319 (9th Cir. 1987) (independent right to accurate prison record has not been recognized); Johnson v. Felker, No. 1:12–cv–02719 GEB KJN (PC), 2013 WL 6243280, at *6 (E.D. Cal. Dec. 3, 2013) ("Prisoners have no constitutionally guaranteed right to be free from false accusations of misconduct, so the mere falsification of a report does not give rise to a claim under section 1983.") (citations omitted). Moreover, "plaintiff cannot state a cognizable Eighth Amendment violation based on an allegation that defendant[ ] issued a false rule violation against plaintiff." Jones v. Prater, No. 2:10-cv-01381 JAM KJN P, 2012 WL

1979225, at *2 (E.D. Cal. Jun. 1, 2012); see also Youngs v. Barretto, No. 2:16-cv-0276 JAM ACP, 2018 WL 2198707, at *3 (E.D. Cal. May 14, 2019) (noting that issuance of false rules violation report does not rise to the level of cruel and unusual punishment) (citations omitted).

Therefore, Plaintiff fails to state a claim for falsely being accused of a Rules Violation or for false reports by any of the Defendants about Plaintiff's circumstances or conduct.

///

///

### F.  State Law Claims

Plaintiff alleges that Defendants violated CDCR rules and failed to comply with their superior's order to allow Plaintiff to select his own cellmate. These are state law claims. Violation of state tort law, state regulations, rules and policies of the CDCR, or other state law are not sufficient to state a claim for relief under § 1983.

Although the court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law. See 28 U.S.C. § 1367. In this instance, the Court fails to find that Plaintiff has stated any cognizable federal claims in the Complaint. Therefore, Plaintiff's state claims fail and shall be dismissed for failure to state a claim.

Plaintiff is also advised that the Government Claims Act requires exhaustion of state law claims with California's Victim Compensation and Government Claims Board, and Plaintiff is required to specifically allege compliance in his complaint. Shirk v. Vista Unified Sch. Dist., 42 Cal.4th 201, 208-09 (Cal. 2007); State v. Superior Court of Kings Cnty. (Bodde), 32 Cal.4th 1234, 1239 (Cal. 2004); Mabe v. San Bernardino Cnty. Dep't of Pub. Soc. Servs., 237 F.3d 1101, 1111 (9th Cir. 2001); Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995); ); Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 627 (9th Cir. 1988). Plaintiff has not done so.

### V.  CONCLUSION AND ORDER

For the reasons set forth above, the court finds that Plaintiff fails to state any cognizable claims in the Second Amended Complaint against any of the Defendants for violating his

constitutional or other federal rights. Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave to amend when justice so requires." Plaintiff shall be granted one more opportunity to amend the complaint, to cure the deficiencies in his claims identified by the court.

Plaintiff is granted leave to file a Third Amended Complaint not exceeding 25 pages total (complaint and exhibits) within thirty days. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). The amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, Iqbal, 556 U.S. at 678; Jones v. Williams, 297 F.3d. 930, 934 (9th Cir. 2002.). Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Iqbal at 678 (quoting Twombly, 550 U.S. at 555). There is no *respondeat superior* liability, and each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 677. Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights. Jones, 297 F.3d at 934 (emphasis added). Plaintiff should note that although he has been given the opportunity to amend, it is not for the purpose of adding new defendants for unrelated issues. Plaintiff should also note that he has not been granted leave to add allegations of events occurring after the initiation of this suit on March 28, 2019.

Plaintiff is advised that an amended complaint supersedes the original complaint, Lacey v. Maricopa County, 693 F.3d 896, 907 n.1 (9th Cir. 2012), and it must be complete in itself without reference to the prior or superseded pleading. Local Rule 220. Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, **IT IS HEREBY ORDERED** that:

1. Based on the foregoing, the court finds that Plaintiff fails to state any cognizable claims in the Second Amended Complaint against any of the individual

Defendants upon which relief may be granted under § 1983;

2. Plaintiff's Second Amended Complaint is dismissed for failure to state a claim, with leave to file a Third Amended Complaint not exceeding 25 pages total (complaint and exhibits) within **thirty (30) days** from the date of service of this order;

3. The Clerk's Office shall send Plaintiff a civil rights complaint form;

///

4. Plaintiff shall caption the amended complaint "Third Amended Complaint" and refer to the case number 1:19-cv-00400-NONE-GSA-PC; and

5. Plaintiff's failure to comply with this order shall result in a recommendation that this case be dismissed.

IT IS SO ORDERED.

Dated: **October 5, 2021**               **/s/ Gary S. Austin**
                                        UNITED STATES MAGISTRATE JUDGE