# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

ETUATE SEKONA,

           Plaintiff,

    v.

R. PEREZ, et al.,

           Defendants.

**1:19-cv-00400-JLT-GSA-PC**

**FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS CASE PROCEED WITH PLAINTIFF'S FAILURE TO PROTECT CLAIMS AGAINST DEFENDANTS PEREZ, MUNOZ, SIMS, AND MALDONADO, AND THAT ALL OTHER CLAIMS AND DEFENDANTS BE DISMISSED FOR FAILURE TO STATE A CLAIM**
**(ECF No. 32.)**

**OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS**

## I.      BACKGROUND

Etuate Sekona ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983.  On March 28, 2019, Plaintiff filed the Complaint commencing this action.  (ECF No. 1.)  On May 13, 2020, the court dismissed the Complaint for failure to state a claim, with leave to amend.  (ECF No. 15.)  On August 31, 2020, Plaintiff filed the First Amended Complaint.  (ECF No. 21.)  On September 8, 2020, the court dismissed the First Amended Complaint for failure to state a claim, with leave to amend.  (ECF No. 23.)  On April 21, 2021, Plaintiff filed the Second Amended Complaint.  (ECF No. 32.)  On October 6, 2021, the court dismissed the Second Amended Complaint for failure to state a claim,

with leave to amend.  (ECF No. 39.)  On December 13, 2021, Plaintiff filed the Third Amended Complaint, which is now before the court for screening.  (ECF No. 39.)  28 U.S.C. § 1915A.

## II.    SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  While factual allegations are accepted as true, legal conclusions are not.  Id.  The mere possibility of misconduct falls short of meeting this plausibility standard.  Id.

## III.    SUMMARY OF THIRD AMENDED COMPLAINT[1]

Plaintiff is presently incarcerated at Kern Valley State Prison (KVSP) in Delano, California, in the custody of the California Department of Corrections and Rehabilitation, where

---

[1] The court has attempted to set forth Plaintiff's allegations in chronological order, in an effort to clarify the order in which the events occurred.

the events at issue in the Third Amended Complaint allegedly occurred.  Plaintiff names as defendants Correctional Officer (C/O) R. Perez, C/O L. Munoz, C/O C. Sims, C/O Maldonado, and Lieutenant Potelo (collectively, "Defendants").  A summary of Plaintiff's allegations follows:

Plaintiff is a 71-year-old man in poor health who uses a wheelchair.  He is a Pacific South Islander from Tonga and speaks English as a second language.

Plaintiff was first assaulted in prison on June 27, 2014 at Mule Creek State Prison by his cell mate who was a skinhead gang member.  Plaintiff was attacked causing serious bodily injuries, a 4-inch cut on his skull, concussion, brain damage, and loss of most of his teeth.  He has a lawsuit pending at the Sacramento court.  Plaintiff is lucky to be alive and to be able to use his mind.  Prison rules did not help Plaintiff.  Officials found easy ways to pass time, not to protect Plaintiff.

On January 19, 2016, Scott Kernan [not a defendant] sent a memorandum to Directors about inmate housing assignments stating that those with a history of in-cell assaults and violence shall be placed on single-cell status for safety and security, and that wardens shall ensure 60 days of training on this policy.

In November 2016, Plaintiff was transferred from Mule Creek State Prison to KVSP. When Plaintiff was at Mule Creek State Prison in November 2016, before coming to KVSP, he was assaulted in his cell by a cell mate, causing a head concussion and damage to his brain.  He spent 7 days at the hospital.  That is why Plaintiff is so worried about threat or other assaults to his head.  Plaintiff first came to KVSP in November 2016 with single-cell status, and was placed in Building D8 where defendants Perez and Munoz worked.  Plaintiff was highly sensitive, paranoid, and worried about the possibility of another assault.  He had been on single-cell status, but the ICC Committee changed that.  Plaintiff told Defendants Perez and Munoz that before coming to KVSP he was attacked in his cell by his prior cellmate and was seriously injured. Plaintiff was in the care of defendants Perez and Munoz at KVSP for two years, from 2016 until November 17, 2018.

///

In January 2018, the ICC Committee changed Plaintiff to a double cell.  In July 2018, Plaintiff asked for a cell mate he could trust and asked Perez and Munoz to permit him to choose a cell mate.  They refused.  Every inmate except Plaintiff had a choice of cell mates.

In July 2018, Plaintiff wrote to supervising Sergeant Delima [not a defendant], boss to defendants Perez and Munoz, and requested to choose his own cellmate.  DeLima recommended that Plaintiff be allowed to choose his own cellmate and ordered defendants Perez and Munoz to allow it.  But Defendants Perez and Munoz opposed their boss's order and instead selected Nguyen as Plaintiff's cellmate.

Defendants denied Plaintiff's requests out of retaliation for Plaintiff's litigation activity.  They retaliated because they knew about Plaintiff's lawsuits from Mule Creek State Prison because Plaintiff used a phone in their office to talk to the A.G. lawyer in August 2018 about a pending case.  Defendants Perez and Munoz told Plaintiff he would be rich soon.

Before November 17, 2018, Plaintiff was assaulted.  He had 3 cellmates, 2 with mental disorders.  Plaintiff complained and officials removed them for Plaintiff's safety.  In November 2018, Plaintiff had a cellmate who had a live mouse, made wine in the cell, and threatened Plaintiff.  Plaintiff told Perez and Perez who removed him.  That day, she (Perez) went to D3 and chose inmate Nguyen as Plaintiff's cell mate, a lifer without parole, 20 years old.  She told Plaintiff he did not have a choice.

The morning of November 17, 2018, Plaintiff was called to the education room.  When he returned to his cell all of his property was messed up.  A porter told Plaintiff that Nguyen went through his things and stole some items and gave them away to his friends.  Plaintiff asked Nguyen why he took Plaintiff's personal things.  Nguyen was mad and jumped from the top bunk to Plaintiff with a punch to his face and head.  Plaintiff was knocked down between the toilet and wall.  Nguyen continued to punch and kick Plaintiff until he was tired.  Defendant Munoz came and opened the door to let them out.  Nurses came too and took Plaintiff to the hospital.  Nguyen did not have a scratch on him because Plaintiff never touched him.   Plaintiff was in the hospital for 2 days and when he returned there was an inmate in his cell.  Plaintiff complained again.  In

///

4

a week or two, Defendants Perez and Munoz ordered Plaintiff to be removed to D3 where defendants Sims and Maldonado worked.

Defendants Perez and Munoz failed to protect Plaintiff from being assaulted on November 17, 2018, by inmate Nguyen.  Plaintiff reported to them of threats by Nguyen to Plaintiff's life to harm or kill him.  A week before the incident, Plaintiff warned them, told them Nguyen would kill him if they did not separate Plaintiff and Nguyen.  Nguyen stole Plaintiff's property, food, and clothing.  Plaintiff talked to him and gave him things for free, but he did not stop.  Nguyen threatened Plaintiff more after he told defendants Perez and Munoz to separate them.  Perez and Munoz never acted to protect Plaintiff until he was assaulted.  Defendant Munoz saw the assault and stopped it, then filed a fraudulent report saying Plaintiff confessed that he was first to punch Nguyen.  Defendant Munoz filed the fraudulent report out of retaliation for Plaintiff's legal cases and 602's.  He agreed with Defendant Perez to send Plaintiff to D3, C/O Sims' building.  He knew how to put away an inmate who complains and files suit.  Plaintiff was found guilty and put away in the C-Status segregation unit.  Plaintiff was in segregation for 6 months for something he never did.

Defendant Munoz came to D3 and worked overtime there, to talk with Sims about Plaintiff's issue.  Plaintiff wondered why he hated or was racist against Plaintiff.  The first day in D3, Plaintiff told Sims and Maldonado about his assault at D8 on November 17, 2018, and that he wanted to choose his own cell mate for his safety.

Upon information and belief, all Defendants are members of the Green Wall gang at KVSP.  They hired gang member inmates to work for them for treats.  Inmates Nguyen and Bowden were both BFG (Black Gorilla Family) gang members.  Inmate Bowden was in the D3 Building where Plaintiff was removed to on December 8 or 10, 2018.  Defendant Munoz came and worked in D3 some days in December 2018 and talked with Sims about Plaintiff.  Plaintiff heard Defendant Munoz tell Sims that Plaintiff had lawsuits against another correctional officer at MCSP.

On December 10 or 12, 2018, Defendants Sims and Maldonado put inmate Bowden in the cell with Plaintiff, and Bowden threatened Plaintiff with a knife and demanded his legal

papers.  Plaintiff never knew Bowden.  Bowden never knew Plaintiff had legal papers, but Defendants let Bowden know that Plaintiff had legal papers and they failed to protect him from threats.  Bowden was inside Plaintiff's cell and took Plaintiff's property.  Defendants Sims and Maldonado conspired with Defendants Perez and Munoz to move Plaintiff to D3, to continue threatening and harassing him, and to take his legal papers.  Bowden stole Plaintiff's property – legal papers, shoes, fan, and other things.  Defendant Sims got back the fan and shoes but not the legal papers.  Plaintiff refused to have Bowden as a cell mate, and Defendant Sims wrote up a 115.  Defendant Sims got what he wanted, then filed a fraudulent 115 saying Plaintiff refused to have Bowden for a cell mate.  Plaintiff was sentenced to C-status segregation for 6 months. Defendants Sims and Maldonado failed to protect Plaintiff.  If he went back to the cell, Bowden would use the knife on him.

Plaintiff saw Bowden's knife, a home-made steel blade 3-4 inches long, the size of a pen. The door opened for medication time.  Plaintiff ran to Defendants, pushing his wheelchair to Defendants Sims and Maldonado, and he told them Bowden threatened him with a knife. Defendant Sims told Plaintiff to go back and fight with him.  They never acted or searched for the knife or protected Plaintiff.  Defendant Sims pushed Plaintiff in the wheelchair to his cell and told him to fight with Bowden.  Plaintiff refused to go back to his cell.  Plaintiff refused Sims and Maldonado when they ordered him to go and fight with Bowden.  Plaintiff was still bleeding in his brain from the November 17, 2018 assault a few weeks prior.

In January 2019, a hearing was held before Defendant Lieutenant Potelo, senior hearing officer.  There were two hearings, one for Sims's 115 report and one for Munoz's 115 report.  At both hearings, Defendant Potelo refused to call witnesses.  Potelo was also racist against Plaintiff, called Plaintiff names and was biased against him.  Defendant Sims lied at Plaintiff's disciplinary hearing to put Plaintiff away for 6 months in the worst C-status, with no hot pot, television, fan, or canteen, in violation of due process.  Defendants Sims and Munoz both lied, retaliating against Plaintiff for his protected activity – litigation and grievances against them.  Plaintiff's time in segregation in winter from January to July 2019 was so cold, Plaintiff was hungry, plus his brain was bleeding for 6 months.

Title 15 needs to be reformed about cell-mate choices.  That is the most dangerous part of prison life.  Plaintiff was assaulted in his cell four times.

As relief, Plaintiff requests declaratory relief and monetary damages.

## IV.   PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).  "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress."  Id.

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him or her of rights secured by the Constitution or federal law.  Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law").  A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).  "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or

7

reasonably should know would cause others to inflict' constitutional harms." <u>Preschooler II</u>, 479 F.3d at 1183 (quoting <u>Johnson</u>, 588 F.2d at 743).  This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." <u>Arnold v. Int'l Bus. Mach. Corp.</u>, 637 F.2d 1350, 1355 (9th Cir. 1981); <u>see</u> <u>also</u> <u>Harper v. City of Los Angeles</u>, 533 F.3d 1010, 1026 (9th Cir. 2008).

### A.    <u>Failure to Protect -- Eighth Amendment Claim</u>

Prison officials have a duty under the Eighth Amendment to protect prisoners from violence at the hands of other prisoners because being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.  <u>Farmer v. Brennan</u>, 511 U.S. 825, 834, 114 S.Ct. 1970, 28 L.Ed.2d 811 (1994); <u>Clem v. Lomeli</u>, 566 F.3d 1177, 1181 (9th Cir. 2009); <u>Hearns v. Terhune</u>, 413 F.3d 1036, 1040 (9th Cir. 2005).  However, prison officials are liable under the Eighth Amendment only if they demonstrate deliberate indifference to conditions posing a substantial risk of serious harm to an inmate; and it is well settled that deliberate indifference occurs when an official acted or failed to act despite his knowledge of a substantial risk of serious harm.  <u>Farmer</u>, 511 U.S. at 834, 841; <u>Clem</u>, 566 F.3d at 1181;  <u>Hearns</u>, 413 F.3d at 1040.

"While the Eighth Amendment requires prison officials to provide prisoners with the basic human needs, including reasonable safety, it does not require that the prisoners be comfortable and provided with every amenity." <u>Hoptowit v. Ray</u>, 682 F.2d 1237, 1246 (9th Cir. 1982)), overruled on other grounds by <u>Sandin v. Conner</u>, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).  A housing assignment may be "restrictive and even harsh," but will not violate the Eighth Amendment unless it "either inflicts unnecessary or wanton pain or is grossly disproportionate to the severity of crimes warranting imprisonment."  <u>Rhodes v. Chapman</u>, 452 U.S. 337, 348–49 (1981) (finding inmates had no constitutional right to be housed in single cells). Only where prison officials knew that a housing assignment posed an excessive risk to an inmate's safety will placement with a particular inmate have constitutional implications.  <u>Estate of Ford v. Ramirez– Palmer</u>, 301 F.3d 1043, 1050 (9th Cir. 2002).

///

An inmate has no constitutional right to a particular security classification or housing. See Meachum v. Fano, 427 U.S. 215, 224–25 (1976) (no liberty interest protected by the Due Process Clause is implicated in a prison's reclassification and transfer decisions); see also Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007). Neither the Eighth nor the Fourteenth Amendment endows prisoners with a right to be housed in a particular part of the prison or with a particular inmate. See Meachum, 427 U.S. at 224–25 (no liberty interest in placement in particular facility); Allen v. Purkett, 5 F.3d 1151, 1153 (8th Cir. 1993) (no Due Process right to be housed with compatible inmate); Bjorlin v. Hubbard, No. CIV S–09–1793 2010 WL 457685, *1 (E.D. Cal. Feb. 4, 2010) (same).

Plaintiff claims that Defendants Munoz and Perez failed to protect him from an attack by Plaintiff's cellmate Nguyen. Plaintiff alleges that Defendants Munoz and Perez knew that Plaintiff had been attacked by cellmates in the past, and he blames Defendant Perez because Perez chose Nguyen as Plaintiff's cellmate. Plaintiff alleges that before Nguyen attacked him, Plaintiff told Defendants Munoz and Perez about threats by Nguyen to Plaintiff's life, to harm or kill him if Plaintiff reported to the officers. A week before the incident, Plaintiff warned them, telling them that Nguyen would kill him if they did not separate Plaintiff and Nguyen. Plaintiff alleges that Nguyen threatened Plaintiff more after he told Defendants Perez and Munoz to separate them. Based on these allegations, the court finds that Plaintiff states a claim against Defendants Munoz and Perez for failing to protect him from the attack by Nguyen.

In addition, Plaintiff finds fault with Defendants Perez and Munoz for not complying with the Sergeant's order to allow Plaintiff to choose his own cellmate, but Plaintiff has not done more than speculate that he (Plaintiff) would choose better cellmates. Thus, the mere fact that Defendants Perez and Munoz chose not to allow Plaintiff to choose his own cellmates does not make them liable for failing to protect Plaintiff.

Plaintiff also states a claim against Defendants Sims and Maldonado for taking Plaintiff back to his cell and telling him to fight with inmate Bowdon. Plaintiff saw the knife that Bowden threatened him with. Plaintiff alleges that he ran to Defendants Sims and Maldonado, pushing his wheelchair, and told them Bowdon threatened him with a knife. Defendant Sims told Plaintiff

to go back and fight with Bowden.  Defendant Sims pushed Plaintiff in the wheelchair to his cell and told him to fight with Bowden, but Plaintiff refused to go back to his cell when they ordered him to go and fight with Bowden.

Based on the foregoing, the court finds that Plaintiff states cognizable claims against Defendants Perez, Munoz, Sims, and Maldonado for failing to protect him.

### B.   Conspiracy

Conspiracy under § 1983 requires proof of "an agreement or meeting of the minds to violate constitutional rights," Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002) (internal quotation marks omitted) (quoting United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989)), and that an "'actual deprivation of his constitutional rights resulted from the alleged conspiracy,'" Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, 866 F.2d 1121, 1126 (9th Cir. 1989) ).  "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" Franklin, 312 F.3d at 441 (quoting United Steelworkers, 865 F.2d at 1541).  A plaintiff must allege facts with sufficient particularity to show an agreement or a meeting of the minds to violate the plaintiff's constitutional rights. Miller v. Cal. Dep't of Soc. Servs., 355 F.3d 1172, 1177 n.3 (9th Cir. 2004) (citing Woodrum, 866 F.2d at 1126).  The mere statement that defendants "conspired" or acted "in retaliation" is not sufficient to state a claim.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).

The Ninth Circuit requires a plaintiff alleging a conspiracy to violate civil rights to "state specific facts to support the existence of the claimed conspiracy." Olsen v. Idaho State Bd. of Med., 363 F.3d 916, 929 (9th Cir. 2004) (citation and internal quotation marks omitted) (discussing conspiracy claim under § 1985); Burns v. County of King, 883 F.2d 819, 821 (9th Cir. 1989) ("To state a claim for conspiracy to violate one's constitutional rights under section 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy." (citation omitted) ).

Plaintiff's allegations of conspiracy under § 1983 fail to state a claim because his allegations are vague and conclusory. Plaintiff alleges that he heard Defendants Munoz and Sims talking together about Plaintiff and his lawsuits, and that Defendants Perez and Munoz conspired with Defendants Sims and Maldonado to move Plaintiff to Building D3 to continue harassing and threatening him. However, Plaintiff has not alleged facts showing that any of the Defendants agreed to violate Plaintiff's rights. Plaintiff does not provide any specific facts showing that any of the Defendants had an agreement to retaliate against him or otherwise violate his constitutional rights. Therefore, Plaintiff fails to state a claim for conspiracy.

**C.    Retaliation**

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir. 2005). To state a cognizable retaliation claim, Plaintiff must establish a nexus between the retaliatory act and the protected activity. Grenning v. Klemme, 34 F.Supp.3d 1144, 1153 (E.D. Wash. 2014).

Plaintiff's allegations in the Third Amended Complaint do not show the required connection between adverse actions by any of the Defendants and Plaintiff's protected First Amendment activities. Plaintiff has not shown that adverse actions were taken against him *because* of his litigation and grievance activities. Moreover, Plaintiff has failed to allege facts to satisfy all five of the elements of a retaliation claim. Therefore, Plaintiff fails to state a claim for retaliation.

///
///
///

**D.**   **Due Process – Lieutenant Potelo**

In order to invoke the protection of the Due Process Clause, a plaintiff must first establish the existence of a liberty interest for which the protection is sought.  Id.  Liberty interests may arise from the Due Process Clause itself or from state law.  Id.

The Due Process Clause itself does not confer on inmates a liberty interest in being confined in the general prison population instead of administrative segregation.  See Hewitt v. Helms, 459 U.S. 460, 466-68 (1983); see also May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) (convicted inmate's due process claim fails because he has no liberty interest in freedom from state action taken within sentence imposed and administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence) (quotations omitted); Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000) (plaintiff's placement and retention in the SHU was within range of confinement normally expected by inmates in relation to ordinary incidents of prison life and, therefore, plaintiff had no protected liberty interest in being free from confinement in the SHU) (quotations omitted).

Under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation.  Sandin, 515 U.S. at 481-84.  Liberty interests created by state law are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484; Myron, 476 F.3d at 716.

Here, Plaintiff alleges that the hearing officer, Defendant Lieutenant Potelo, did not allow him witnesses at his hearings, and he spent six months in C-status segregation for something he did not do.  He alleges that during the six months in segregation, he was cold and hungry, and they took away his hot pot, fan, and TV foods.  Without more, these hardships are not atypical and significant in relation to the ordinary incidents of prison life.  Therefore, Plaintiff has not shown that he had a liberty interest in being free from confinement in segregation.

Based on these allegations, Plaintiff fails to state a claim for due process against any of the Defendants and fails to state any cognizable claim against defendant Lieutenant Potelo.

///

E.        **False Reports/Accusations**

The creation of false evidence, standing alone, is not actionable under § 1983. See Hernandez v. Johnston, 833 F.2d 1316, 1319 (9th Cir. 1987) (independent right to accurate prison record has not been recognized); Johnson v. Felker, No. 1:12–cv–02719 GEB KJN (PC), 2013 WL 6243280, at *6 (E.D. Cal. Dec. 3, 2013) ("Prisoners have no constitutionally guaranteed right to be free from false accusations of misconduct, so the mere falsification of a report does not give rise to a claim under section 1983.") (citations omitted). Moreover, "plaintiff cannot state a cognizable Eighth Amendment violation based on an allegation that defendant[ ] issued a false rule violation against plaintiff." Jones v. Prater, No. 2:10-cv-01381 JAM KJN P, 2012 WL 1979225, at *2 (E.D. Cal. Jun. 1, 2012); see also Youngs v. Barretto, No. 2:16-cv-0276 JAM AC P, 2018 WL 2198707, at *3 (E.D. Cal. May 14, 2019) (noting that issuance of false rules violation report does not rise to the level of cruel and unusual punishment) (citations omitted).

Therefore, Plaintiff fails to state a claim for falsely being accused of Rules Violations or for false reports by any of the Defendants about Plaintiff's circumstances or conduct.

F.        **Verbal Harassment**

Plaintiff alleges that Defendants Sims and Potelo were both racist and that Defendant Potelo was biased against Plaintiff and called Plaintiff names. Mere verbal harassment or abuse, including the use of racial epithets, does not violate the Constitution and, thus, does not give rise to a claim for relief under 42 U.S.C. § 1983. Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987). Even threats do not rise to the level of a constitutional violation, Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987).

Therefore, Plaintiff fails to state a claim for verbal harassment by Defendants Sims and Potelo.

G.        **Fraud**

Fraud is a state law claim. The essential elements of a cause of action for fraud and deceit in California are (1) misrepresentation, (2) knowledge of the falsity or scienter, (3) intent to defraud – that is, induce reliance, (4) justifiable reliance, and (5) resulting damages. Verrees v. Davis, No. F079517, 2021 WL 5997393, at *1 (Cal. Ct. App. Dec. 20, 2021)( citing Lazar v.

Superior Court, (1996) 12 Cal.4th 631, 638; see Mirkin v. Wasserman, (1993) 5 Cal.4th 1082, 1092 [plaintiff in action for deceit must plead common law element of actual reliance]; cf. Civ. Code, § 1572 [actual fraud] with Civ. Code, § 1710[deceit defined].))  These elements "must be pled specifically; general and conclusory allegations do not suffice. [Citations.]"  Id. (citing Lazar, supra, at p. 645.)  The requirement for specific allegations "'necessitates pleading *facts* which "show how, when, where, to whom, and by what means the representations were tendered."' [Citation.]"  (Ibid.)  Stated another way, a plaintiff must allege "with particularity who made the statements, when they were made, what was actually stated, [and] why they were false. [Citations.]"  Id. (quoting Scott v. JPMorgan Chase Bank, N.A., (2013) 214 Cal.App.4th 743, 763.))  Under these pleading rules, a plaintiff's conclusory allegation of reliance is insufficient to state that essential element.  Id. (citing Glaski v. Bank of America, (2013) 218 Cal.App.4th 1079, 1091.))

        While a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the circumstances of the fraud must be stated with particularity is a federally imposed rule."  Siafarikas v. Mercedes-Benz USA, LLC, No. 2:20-CV-01784-JAM-AC, 2021 WL 4147251, at *2 (E.D. Cal. Sept. 13, 2021) (quoting Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009) (internal citations and quotation marks omitted)).  "Rule 9(b) [of the Federal Rules of Civil Procedure] demands that the circumstances constituting the alleged fraud 'be specific enough to give defendants notice of the particular misconduct . . . so they can defend against the charge and not just deny that they have done anything wrong.' "  Id. (quoting Kearns, 567 F.3d at 1124 (internal citations omitted)).  As explained below, Plaintiff's allegations in support of his fraud claim fall well short of what is required under Rule 9(b).

        Plaintiff alleges that Defendants Munoz and Sims committed fraud when they lied and created false reports against him, and that Defendant Potelo conducted fraudulent 115 hearings by refusing to call Plaintiff's witnesses.

        The court does not find allegations in the Third Amended Complaint of the specificity needed to state a fraud cause of action.  The Third Amended Complaint does not specifically

state the contents of any misrepresentations made by any of the Defendants, when the misrepresentation was made, who made it, and when. Thus, the allegations with respect to a claim for fraud against Defendants Sims, Munoz, and Potelo lack the specificity needed to state the essential elements of a fraud cause of action.

Therefore, Plaintiff fails to state a claim for fraud.

## V.   CONCLUSION AND RECOMMENDATIONS

For the reasons set forth above, the court finds that Plaintiff states cognizable claims in the Third Amended Complaint Defendants Perez, Munoz, Sims, and Maldonado for failing to protect him in violation of the Eighth Amendment. Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave to amend when justice so requires." However, here the court is persuaded that Plaintiff is unable allege any facts, based upon the circumstances he challenges, that would state a cognizable claim under § 1983. "A district court may deny leave to amend when amendment would be futile." Hartmann v. CDCR, 707 F.3d 1114, 1130 (9th Cir. 2013). The court finds that the deficiencies outlined above are not capable of being cured by amendment, and therefore further leave to amend should not be granted. 28 U.S.C. § 1915(e)(2)(B)(ii); Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

Based on the foregoing, **IT IS HEREBY RECOMMENDED** that:

1.   This case proceed with Plaintiff's Third Amended Complaint against Defendants Perez, Munoz, Sims, and Maldonado for failing to protect him in violation of the Eighth Amendment;

2.   All of Plaintiff's other claims and defendants in the Third Amended Complaint be DISMISSED, with prejudice, for Plaintiff's failure to state a claim upon which relief may be granted under § 1983; and

3.   This case be referred back to the Magistrate Judge for further proceedings, including service of process.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after the date of service of these Findings and Recommendations, Plaintiff

15

may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

    Dated:   **January 21, 2022**                          **/s/ Gary S. Austin**
                                                        UNITED STATES MAGISTRATE JUDGE