

1

2

3

4

5

6

7

8                                    UNITED STATES DISTRICT COURT

9                            FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    ETUATE SEKONA,                              Case No.  1:19-cv-00400-JLT-HBK

12                        Plaintiff,              FINDINGS AND RECOMMENDATIONS TO
                                                  GRANT DEFENDANTS' MOTION FOR
13            v.                                  SUMMARY JUDGMENT AND PARTIAL
                                                  DISMISSAL[1]
14    R. PEREZ, *et al*.
                                                  (Doc. No. 40)
15                        Defendants.
                                                  FOURTEEN-DAY OBJECTION PERIOD
16

17

18            This matter was reassigned to the undersigned on July 3, 2025.  (Doc. No. 106).  Pending

19    before the Court is Defendants Sims and Munoz's motion for summary judgment and partial

20    dismissal.  (Doc. No. 69, "Motion").  Plaintiff filed an Opposition (Doc. No. 76), and Defendants

21    filed a Reply (Doc. No. 78).  For the reasons below, the undersigned recommends that the District

22    Court grant the Motion and grant summary judgment as to Plaintiff's claim against Defendant

23    Sims for Plaintiff's failure to exhaust his administrative remedies against Defendant Sims, grant

24    Defendants motion to dismiss Plaintiff's claims for declaratory relief and his claims against

25    Defendants in their official capacities.  This case will thus remain pending on Plaintiff's Eight

26    Amendment claim for failure to protect for monetary damages against Defendant Munoz.

27    _____

      [1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302
28    (E.D. Cal. 2025).

1

## I.    BACKGROUND

2

### A. Summary of Allegations in Operative Complaint

3        Plaintiff Etuate Sekona, a state prisoner, initiated this action by filing a civil rights

4   complaint pursuant to 42 U.S.C § 1983.  (Doc. No. 1).  Plaintiff currently proceeds pro se and *in*

5   *forma pauperis* on his Third Amended Complaint ("TAC"), as screened, alleging Eighth

6   Amendment failure-to-protect claims against correctional officers Munoz and Sims in both their

7   individual and official capacities.  (Doc. No. 39).  The events giving rise to the TAC occurred

8   while Plaintiff was housed at California Department of Corrections and Rehabilitation ("CDCR")

9   Kern Valley State Prison ("KVSP").[2]  (*See generally* Doc. No. 39).

10       In relevant part, the TAC alleges that on November 17, 2018, Plaintiff was severely

11  assaulted by his cellmate, Nguyen, despite Plaintiff warning Defendant Munoz in advance that

12  Nguyen posed an imminent threat to him due to prior hostility and gang affiliations.  (*Id*. at 6–11).

13  Plaintiff contends that Munoz refused his repeated requests for a cell change and proceeded with

14  the housing assignment despite Plaintiff's protected status under a directive issued by a

15  supervising sergeant authorizing Plaintiff to select his own cellmate.  (*Id*. at 10).

16       Plaintiff further alleges that after he was transferred to D3 housing, Plaintiff warned

17  Defendant Sims on December 12, 2018 that his newly assigned cellmate, Bowden, threatened to

18  kill him with a knife.  (*Id*. at 9–14).  After Plaintiff ran to Defendants Sims and Maldonado,

19  pushing his wheelchair, and telling them Bowden threatened him with a knife, Defendant Sims

20  told Plaintiff pushed Plaintiff in the wheelchair to his cell and told him to fight with Bowden, but

21  Plaintiff refused to go back to his cell when they ordered him to go and fight with Bowden

22

23

24

25  [2] In May 2022, Plaintiff filed a signed and dated Notice of Change of Address declaring that he was transferred from KVSP to Salinas Valley State Prison.  (Doc. No. 51).  A year later, Plaintiff filed a second

26  notice with the Court stating he was transferred from that facility to Valley State Prison where he is currently housed.  (Doc. No. 98).  The Court takes judicial notice that Plaintiff was transferred from KVSP

27  in May of 2022 in accordance with Defendants request (*see* Doc. No. 69 at 8 n.4).  "The Court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within

28  the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

1    The Court found a failure to protect claims against Defendant Munoz in connection with

2    the attack by inmate Nguyen and against Defendant Sims for taking Plaintiff back to his cell and

3    telling him to fight with inmate Bowdon.  (Doc. Nos. 39, 41, 43, 85, 94).[3]

4         As relief, Plaintiff seeks compensatory damages and declaratory relief.  (*Id*. at 19).

5    **B.  Defendants' Motion for Summary Judgment and Partial Dismissal**

6         Defendants filed the instant Motion on December 5, 2022.  (Doc. No. 69).  In support,

7    Defendants submit a Memorandum of Points and Authorities (*Id*.); a Statement of Undisputed

8    Facts (Doc. No. 69-1); the Declaration of Howard E. Moseley (Doc. No. 69-2); and the

9    Declaration of A. Leyva (Doc. No. 69-3).

10        By their Motion, Defendants argue: (1) Plaintiff failed to exhaust available administrative

11   remedies for his Eighth Amendment failure-to-protect claim against Defendant Sims; (2)

12   Plaintiff's request for declaratory relief is moot following his transfer from KVSP pursuant to

13   Rule 12(b)(1); and (3) Plaintiff's official-capacity claims against both Defendants Munoz and

14   Sims are barred by the Eleventh Amendment under Rule 12(c).  (Doc. No. 69 at 6–13).

15        First, as to their exhaustion-based motion for summary judgment, Defendants argue that

16   although Plaintiff filed CDCR grievance KVSP-O-19-00153 concerning the December 12, 2018

17   incident involving Sims, this grievance was procedurally deficient and Plaintiff failed to fully

18   pursue administrative appeals process available to him.  (Doc. No. 69 at 11–12). Specifically, the

19   grievance Plaintiff submitted on January 2, 2019 was initially rejected on January 14, 2019 for

20   exceeding the allowable number of appeals within a 14-day period.  (*Id*. at 9).  Plaintiff attempted

21   to resubmit the grievance on February 19, 2019, but that appeal was cancelled as untimely—

22   because it fell outside the 30-day correction window. (*Id*.).  Plaintiff was advised of his right to

23   appeal the cancellation, but Plaintiff did not pursue an appeal of the cancellation nor submit a new

24

25   [3] On January 21, 2021, the previously assigned magistrate judge found the TAC stated a cognizable Eighth
     Amendment failure to protect claim against Perez, Munoz, Sims, and Maldonado, but recommended
26   dismissal of all other constitutional and state law claims and Defendant Potelo.  (Doc. No. 41 at 5–8).  The
     District Judge adopted those recommendations in full on February 15, 2022.  (Doc. No. 43 at 2).
27   Thereafter, the previously assigned magistrate judge issued findings and recommendation to dismiss
     Defendants Perez and Maldonado pursuant to Federal Rule of Civil Procedure 4(m) after repeated service
28   attempt failures, which the District Judge adopted on May 15, 2023.  (Doc. No. 85 at 4–6; Doc. No. 94 at
     2–3).

1    grievance addressing the same incident.  (*Id.*).  Defendants argue that the administrative appeal

2    process ended at that point and thus Plaintiff's grievance against Simms was not exhausted.  (*Id.*

3    at 11–12).

4         Second, Defendants argue that Plaintiff's request for declaratory relief is moot because his

5    transfer from KVSP eliminates any ongoing controversy, making the claim nonjusticiable under

6    Article III.  (*Id.* at 13–14).

7         Third, Defendants argue that Plaintiff's official-capacity claims for monetary relief against

8    both Defendants are barred by the Eleventh Amendment because state officials are not considered

9    "persons" under §1983, and no injunctive relief or other prospective relief is sought to trigger the

10   *Ex Parte Young* exception. (*Id.* at 15).

11        **C.  Plaintiff's Opposition**

12        After being granted multiple extensions of time, Plaintiff filed his Opposition to the

13   Motion on March 2, 2023.  (Doc. No. 76).  In support, Plaintiff submits (1) his declaration (*id.* at

14   21), (2) a one-page Statement of Disputed Facts, (*Id.* at 22), and (3) numerous exhibits, which

15   predominately include grievances unrelated to the December 12, 2018 incident, court orders in

16   other cases, and medical documents.  (*Id.* at 23–192).  Plaintiff did not file objections to

17   Defendants' listed undisputed material facts outlined in their Statement of Undisputed Facts.

18        First, in opposition to Defendants' exhaustion-based motion for summary judgment,

19   Plaintiff contends that he did, in fact, exhaust available administrative remedies as required under

20   the Prison Litigation Reform Act ("PLRA"), or that such remedies were effectively unavailable

21   due to obstruction by prison officials and that the process was opaque and inaccessible.  (*Id.* at 2–

22   4).  Plaintiff further asserts that he timely filed grievance KVSP-O-19-00153 as an emergency

23   appeal.  (*Id.*).

24        Second, in opposition to Defendants' motion to dismiss Plaintiff's request for declaratory

25   relief, Plaintiff argues that the claim remains justiciable because he continues to face a credible

26   threat of harm within the CDCR prison system, where the same rules and conditions apply across

27   institutions. (*Id.* at 5).

28        Third, in opposition to Defendants' motion to dismiss the official-capacity claims,

4

1  Plaintiff argues that his official-capacity claims are not barred by the Eleventh Amendment

2  because he will seek injunctive relief to remedy ongoing constitutional violations. (*Id.*).

## II.   APPLICABLE LAW

### A.  Summary Judgment Standard

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material where it is (1) relevant to an element of a claim or a defense under the substantive law and (2) would affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 247 (1987).

The party moving for summary judgment bears the initial burden of proving the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). When the moving party has met this burden, the nonmoving party must go beyond the pleadings and set forth specific facts by affidavits, deposition testimony, documents, or discovery responses, showing there is a genuine issue that must be resolved by trial. *See* Fed. R. Civ. P. 56(c)(1); *Pacific Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021). A mere "scintilla of evidence" in support of the nonmoving party's position is insufficient. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). Rather, the evidence must allow a reasonable juror, drawing all inferences in favor of the nonmoving party, to return a verdict in that party's favor. *Id.*

In an exhaustion-based summary judgment motion, the defendant bears the initial burden of establishing "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014). If the defendant carries that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* The ultimate burden of persuasion remains, however, with defendant. *Id.*

The Court has carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and

1    other papers filed by the parties.  The omission to an argument, document, paper, or objection is

2    not to be construed that the Court did not consider the argument, document, paper, or objection.

3    Instead, the Court thoroughly reviewed and considered the evidence it deemed admissible,

4    material, and appropriate for purposes of this Order.

5          **B.  Exhaustion Under the PLRA**

6          Under the PLRA, "[n]o action shall be brought with respect to prison conditions under [42

7    U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other

8    correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C.

9    § 1997e(a).  The exhaustion requirement "applies to all inmate suits about prison life," including

10   *Bivens* claims.  *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002).  Exhaustion is a condition

11   precedent to filing a civil rights claim.  *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

12         The PLRA recognizes no exception to the exhaustion requirement, and the court may not

13   recognize a new exception, even in "special circumstances."  *Ross v. Blake*, 578 U.S. 632, 648

14   (2016).  The one significant qualifier is that "the remedies must indeed be 'available' to the

15   prisoner."  *Id.* at 639.  There are three circumstances where remedies are deemed unavailable:

16             (1) the "administrative procedure . . . operates as a simple dead end
          with officers unable or consistently unwilling to provide any relief to

17             aggrieved inmates;" (2) the "administrative scheme . . . [is] so opaque
          that it becomes, practically speaking, incapable of use . . . so that no

18             ordinary prisoner can make sense of what it demands;" and (3)
          "prison administrators thwart inmates from taking advantage of a

19             grievance process through machination, misrepresentation, or
          intimidation."

20

21   *Ross*, 578 U.S. at 643-44.  A prison's internal grievance process controls whether the grievance

22   satisfies the PLRA exhaustion requirement.  *Jones v. Bock*, 549 U.S. 199, 218 (2007).

23         An inmate must exhaust available remedies but is not required to exhaust unavailable

24   remedies.  *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (*en banc*).  "To be available, a

25   remedy must be available 'as a practical matter'; it must be 'capable of use; at hand.'"  *Id*.

26   (quoting *Brown v. Valoff*, 422 F.3d 926, 936–37 (9th Cir. 2005)).  "Accordingly, an inmate is

27   required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain

28   'some relief for the action complained of.'"  *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016)

1    (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)).

2         Failure to exhaust under the PLRA is "an affirmative defense the defendant must plead

3    and prove." *Jones*, 549 U.S. at 204.  It is the defendant's burden to prove that there was an

4    available administrative remedy, and that the prisoner failed to exhaust that remedy.  *Albino*, 747

5    F.3d at 1172.  "Once the defendant has carried that burden, the prisoner has the burden of

6    production.  That is, the burden shifts to the prisoner to come forward with evidence showing that

7    there is something in his particular case that made the existing and generally available

8    administrative remedies effectively unavailable to him."  *Id*.  If the court concludes that the

9    prisoner failed to exhaust available administrative remedies, the proper remedy is dismissal

10   without prejudice.  *See Jones*, 549 U.S. at 223–24; *Lira v. Herrera*, 427 F.3d 1164, 1175–76 (9th

11   Cir. 2005).

12            **C.  CDCR Applicable Grievance Procedures**

13        The California Department of Corrections and Rehabilitation's ("CDCR") administrative

14   remedy process governs this action.[4]  *See* Cal. Code Regs. tit. 15, § 3084.1.  To exhaust available

15   remedies, an inmate must proceed through three formal levels of review unless otherwise excused

16   under the regulations.  *Id.* § 3084.5.  A prisoner initiates the exhaustion process by submitting a

17   CDCR Form 602 "Inmate/Parolee Appeal" ("grievance").  *Id.* §§ 3084.2(a), 3084.8(b) (quotation

18   marks omitted).  The grievance must "describe the specific issue under appeal and the relief

19   requested," and the inmate "shall list all staff member(s) involved and shall describe their

20   involvement in the issue."  *Id.* § 3084.2(a).  The inmate "shall state all facts known and available

21   to him/her regarding the issue being appealed at the time of submitting the Inmate/Parolee Appeal

22   Form, and if needed, the Inmate Parolee/Appeal Form Attachment."  *Id.* § 3084.2(a)(4).

23   "Administrative remedies shall not be considered exhausted relative to any new issue,

24   information, or person later named by the appellant that was not included in the originally

25   submitted CDCR Form 602."  *Id.* § 3084.1(b).

26   _____

27   [4] Effective June 1, 2020, California Code of Regulations Title 15, sections 3084 through 3084.9 were
     repealed and replaced with renumbered and amended provisions at sections 3480 through 3487.  *See*
28   *Springs v. Raber*, 2022 WL 1004561, at *3 (S.D. Cal. Apr. 4, 2022).  All the citations in this order are to
     the regulations in place in 2018 and 2019, the relevant period for this action.

1          An inmate must submit an appeal within thirty calendar days of "[t]he occurrence of the

2     event or decision being appealed" or "[u]pon first having knowledge of the action or decision

3     being appealed." *Id*. §§ 3084.8(b), 3084.6(c)(4).  Under certain circumstances, an appeal will be

4     accepted after the deadline.  A late appeal may only be canceled where "the inmate or parolee had

5     the opportunity to submit within the prescribed time constraints."  *Id*. § 3084.6(c)(4).  Further, "at

6     the discretion of the appeals coordinator or third level Appeals Chief, a cancelled appeal may

7     later be accepted if a determination is made that cancellation was made in error or new

8     information is received which makes the appeal eligible for further review."  *Id*. at § 3084.6(a)(3).

9     Under exceptional circumstances an appeal may be accepted for review beyond the 30-day

10    deadline, for instance, when an inmate is medically incapacitated and unable to file an appeal.  *Id*.

11    at § 3084.6(a)(4).  Further, "[a]dministrative remedies shall not be considered exhausted relative

12    to any new issue, information, or person later named by the appellant that was not included in the

13    originally submitted CDCR Form 602 (Rev. 08/09), Inmate/Parolee Appeal, which is

14    incorporated by reference, and addressed through all required levels of administrative review up

15    to and including the third level."  *Id*. at § 3084.1(b).

16          Importantly, inmates are limited to filing one appeal every fourteen calendar days unless

17    the appeal qualifies as an emergency.  *Id*. at § 3084.1(f).  An emergency appeal is defined under §

18    3084.9(a) as one in which the inmate demonstrated a substantial risk of serious injury or

19    irreparable harm if the appeal were delayed.  If the appeals coordinator determines that the appeal

20    qualifies as an emergency, the first level of review is bypassed and the second level was required

21    to respond within five working days.  *Id*. at § 3084.9(a)(4). If the appeal was not accepted as an

22    emergency, it proceeded through the standard three-level review process. *Id*. at § 3084.9(a)(3).

23          Pursuant to § 3084.6(e), once an appeal is cancelled, that appeal may not be resubmitted;

24    however, a separate appeal can be filed on the cancellation decision.  Where an appeal is

25    cancelled due to a procedural error on the part of the inmate, administrative remedies remain

26    available to the inmate—namely appealing the cancellation decision.  *See Cortinas v. Portillo*,

27    754 F. App'x 525, 527 (9th Cir. 2018) ("Because [plaintiff] could have appealed his cancellation

28    decision . . . the improper cancellation of his appeal did not render administrative remedies

1    effectively unavailable to him."); *Davenport v. Gomez*, 2019 WL 636844, at \*15 (E.D. Cal. Feb.

2    14, 2019) (noting that the appeals process is available where the plaintiff can raise the

3    cancellation appeal to the next level).

4         To exhaust administrative remedies, the inmate is required to receive a substantive

5    decision at the third level of review.  *Id*. § 3084.7(d)(3).  Accordingly, unless the inmate pursued

6    the appeal through all three levels and received a final decision, the administrative remedies were

7    not exhausted.

8         **D.  Rule 12(b)(1) Standard and Article III**

9         Federal Rule of Civil Procedure 12(b)(1) allows parties to move to dismiss claims for lack

10    of subject-matter jurisdiction.  A federal court is presumed to lack subject matter jurisdiction, and

11    a plaintiff bears the burden of establishing that subject matter jurisdiction is proper.  *See*

12    *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).  A federal court is required to

13    dismiss the action if jurisdiction is lacking.  *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1116 (9th

14    Cir. 2004); Fed. R. Civ. P. 12(h)(3).  Further, 28 U.S.C. § 1915(d) empowers the district court to

15    dismiss an in *forma pauperis* action that is "frivolous or malicious."  *Pratt v. Sumner*, 807 F.2d

16    817, 819 (9th Cir. 1987).  A "claim is 'frivolous within the meaning of section 1915(d) in that the

17    court lacks subject matter jurisdiction.'"  *Castillo v. Marshall*, 107 F.3d 15, \*1 (9th Cir. 1997)

18    (unpublished opinion) (brackets omitted) (quoting *Pratt v. Sumner*, 807 F.2d 817, 819 (9th Cir.

19    1987); citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)).

20         Under Article III, Section II of the Constitution, a federal court's jurisdiction is limited to

21    adjudication of "live" cases and controversies.  *See Hollingsworth v. Perry*, 570 U.S. 693, 705

22    (2013) ("Article III demands that an actual controversy persist throughout all stages of

23    litigation.") (internal quotation marks omitted); *see also Arizonans for Official English v.*

24    *Arizona,* 520 U.S. 43, 67 (1997) (Article III's "cases" and "controversies" limitation requires that

25    "an actual controversy . . . be extant at all stages of review, not merely at the time the complaint is

26    filed,") (internal quotation marks omitted).  Federal courts consider various doctrines, including

27    "standing," "ripeness," and "mootness" to ascertain whether a meets the "case and controversy"

28    requirement.  *See Poe v. Ullman*, 367 U.S. 497, 502-505 (1961).  To maintain a claim, a litigant

1    must continue to have a personal stake in all stages of the judicial proceeding.  *Abdala v. INS*, 488

2    F.3d 1061, 1063 (9th Cir. 2007) (internal citation omitted).  A case must be dismissed if it

3    becomes moot at any stage.  *See City of Mesquite v. Aladdin's Castle*, 455 U.S. 283, 288 (1982).

4    **E.  Rule 12(c) Standard**

5    Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but

6    early enough not to delay trial—a party may move for judgment on the pleadings."  "Judgment on

7    the pleadings is proper when there is no issue of material fact in dispute, and the moving party is

8    entitled to judgment as a matter of law."  *Scanlon v. Cnty. of Los Angeles*, 92 F.4th 781, 796 (9th

9    Cir. 2024).  Because a Rule 12(c) motion is "functionally identical" to a Rule 12(b)(6) motion,

10   courts should apply the same standard.  *Dworkin v. Hustler Mag., Inc*., 867 F.2d 1188, 1192 (9th

11   Cir. 1989).  In making this determination, the court "accept[s] all factual allegations in the

12   complaint as true and construe[s] them in the light most favorable to the non-moving party."

13   *Herra v. Zumiez, Inc.*, 953 F.3d 1063, 1068 (9th Cir. 2020).  A court may also consider

14   "documents incorporated into the complaint by reference, and matters of which a court may take

15   judicial notice."  *Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1201 (9th Cir. 2021).  A court "may

16   judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known

17   within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined

18   from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).

19   **III.    ANALYSIS**

20   **A.  Material Facts Regarding Exhaustion of Administrative Remedies**

21   Following a thorough review of the evidence submitted, the Court finds the following

22   material facts are deemed undisputed, unless otherwise indicated.  At the outset, the Court notes

23   that Plaintiff's briefing asserts various facts concerning the general difficulty he faced in

24   obtaining grievance forms while in administrative segregation.  (See Doc. No. 76).  Because

25   Plaintiff does not specifically link these difficulties to any of the deficiencies at issue in his

26   grievances, the Court does not find these facts to be material. Following a thorough review of the

27   evidence submitted, the Court finds these material facts are deemed undisputed, unless otherwise

28   indicated:

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- On November 17, 2018, and on December 12, 2018, the date of the incident about which Plaintiff complains, the CDCR's grievance procedure in effect was codified in the in the California Code of Regulations ("CCR"), Title 15, section 3084, et seq. CCR, Title 15, section 3084.1(a) provided that any inmate may appeal any departmental decision, action, condition, or policy which they can demonstrate as having a material effect upon their welfare. (Doc. No. 39 at 6-14; Doc. No. 69-2 at 2-3 ¶¶ 2, 7; *id.* at 6-7; Doc. No. 69-3 at 2-4 ¶¶ 3-6; *id.* at 8-18); California Code of Regulations ("CCR") tit. 15, § 3084.1(a).

- Under CCR, Title 15, section 3084.8(b), an inmate had 30 calendar days to submit an appeal from the occurrence of the event or decision being appealed, or upon first knowledge of the action or decision being appealed. (Doc. No. 69-3 at 2 ¶ 3; *id.* at 16); CCR, tit. 15, § 3084.8(b).

- Under CCR, Title 15, section 3084.1(f), an inmate or parolee has the right to file one appeal every 14 calendar days unless the appeal is accepted as an emergency appeal. (Doc. No. 69-3 at 2 ¶ 3; *id.* at 8-9); CCR, tit. 15, § 3084.1(f).

- The regulations required an inmate to "list all staff member(s) involved" in their grievance and "describe their involvement in the issue." If the inmate did not have this information, they were required to provide any other available information that would assist the appeals coordinator in identifying the staff member. An inmate was also required to state "all facts known and available to his/her regarding the issue being appealed at the time of the submitting the Inmate/Parolee Appeal form." (Doc. No. 69-3 at 2 ¶ 3; *id.* at 9); CCR, tit. 15, § 3084.2(a)(3)-(4).

- The grievance procedure consisted of three levels of review, initiated when an inmate submitted an appeal on CDCR Form 602 – Inmate/Parolee Appeal.  First and second-level appeals were handled by KVSP staff, while third-level appeals were decided at the Office of Appeals. A substantive decision at the third level exhausted an inmate's administrative remedy. (Doc. No. 69-3 at 2-3 ¶¶ 3, 4; *id.* at 14-15); CCR, tit. 15, § 3084.7.

1
2
3

- If an inmate submitted an appeal that was untimely, lacked critical information, or otherwise did not comply with the regulations, the appeal could be screened out. (Doc. No. 69-3 at 2 ¶ 3; *id*. at 12-14); CCR, tit. 15, § 3084.6.

4
5

- An appeal screened out at any level did not exhaust the administrative remedies. (Doc. No. 69-3 at 2 ¶ 3; *id*. at 14); CCR, tit. 15, § 3084.7(c)(3).

6
7
8

- On December 12, 2018, Plaintiff alleges inmate Bowden threatened Plaintiff with a knife, and that Plaintiff received a Rules Violation Report ("RVR") for denying Bowden as a cellmate. (Doc. No. 39 at 13).

9
10

- Plaintiff claims that Sims failed to protect Plaintiff from Bowden on December 12, 2018. (Doc. No. 39 at 15–16).

11
12
13

- On January 2, 2019, Plaintiff filed a grievance Log Number: KVSP-O-19-00153, which alleged that Sims intentionally ignored the threat of harm to Plaintiff from inmate Bowden. (Doc. No. 69-3 at 4 ¶¶ 8-9; *id*. at 24-39).

14
15
16
17

- The first level review at KVSP rejected Plaintiff's appeal on January 14, 2019, because Plaintiff exceeded the allowable number of appeals filed in a 14 calendar day period. The response also informed Plaintiff he had 30 days to resubmit the appeal. (Doc. No. 69-3 at 5 ¶ 9; *id*. at 25).

18
19
20
21
22
23

- Plaintiff returned the CDCR Form 695 dated January 14, 2019, to the Inmate Appeals Office on February 19, 2019, which exceeded the 30 day period. The first level review provided another response on February 19, 2019, which cancelled Plaintiff's appeal for failure to correct and return his rejected grievance within 30 calendar days of the rejection. The response also advised Plaintiff he could appeal the cancellation, but he never did. (Doc. No. 69-3 at 4-6 ¶¶ 6, 9, 13, 14; *id*. 24-39).

24
25
26

- Plaintiff did not file any other CDCR 602 Grievances relating to Defendant Sims, nor did he appeal the first level's cancellation of Log Number: KVSP-O-19-00153. (Doc. No. 69-3 at 5-6 ¶¶ 9, 13, 14; *id*. 24-39).

27
28

- Plaintiff filed his Complaint on March 28, 2019, and the First Amended Complaint on August 31, 2020, the Second Amended Complaint on April 21, 2021, and the Third

12

1    Amended Complaint ("TAC") on December 13, 2021. (Doc. No. 1; Doc. No. 21; Doc.

2    No. 32; Doc. No. 39).

3    • Plaintiff checked "Yes" in response to all three of the following questions: (1) "Is

4    there an inmate appeal or administrative remedy process available at your

5    institution?"; (2) "Have you filed an appeal or grievance concerning ALL of the facts

6    contained in this complaint?"; and (3) "Is the process completed?" (Doc. No. 39 at 4).

7    • Plaintiff has made use of the appeals process, both before and after he filed his appeal

8    in this case, including exhausting his administrative remedies against Defendant L.

9    Munoz and "R. Perez." (Doc. No. 69-2 at 3 ¶¶ 9-10; *id*. at 8-63; Doc. No. 69-3 at 4-5

10    ¶¶ 10-12, 14; *id*. at 41-192).

11    • None of Plaintiff's subsequent or prior appeals had anything to do with the December

12    12, 2018 incident and the claims regarding Sims's failure to protect Plaintiff from

13    inmate Bowden. (Doc. No. 69-2 at 2-4 ¶¶ 7-11; Doc. No. 69-3 at 4-5 ¶¶ 7-14).

14    **B. Plaintiff Did Not Exhaust His Administrative Remedies**

15    The PLRA mandates that a prisoner must exhaust all available administrative remedies

16    before filing suit in federal court. *See* 42 U.S.C. § 1997e(a).  This requirement applies to all suits

17    concerning prison conditions, including those brought under 42 U.S.C. § 1983. *Porter v. Nussle*,

18    534 U.S. 516, 526 (2002).  Here, the uncontroverted evidence in this case shows that Plaintiff did

19    not exhaust his administrative remedies.  Indeed, Plaintiff has used the grievance procedures and

20    the appeals process, both before and after he filed grievance KVSP-O-19-00153 in this case,

21    including exhausting his administrative remedies against Defendant Munoz. (Doc. No. 69-2 at 3

22    ¶¶ 9-10; *id*. at 8-63; Doc. No. 69-3 at 4-5 ¶¶ 10-12, 14; id. at 41-192).  Thus, there is no genuine

23    dispute of material fact that Plaintiff did not complete the prison administrative grievance process

24    as required by the PLRA.

25    **C. No Exception to PLRA Exhaustion Applies**

26    The Supreme Court has made clear that exhaustion is mandatory and that courts may not

27    create exceptions based on special circumstances. *See Ross v. Blake*, 578 U.S. 632, 638–42

28    (2016).  However, the PLRA only requires exhaustion of remedies that are "available." *See id*.

13

1     In *Ross*, the Court identified three circumstances in which administrative remedies may be

2     deemed unavailable: when the process operates as a dead end with no possibility of relief, when

3     the system is so opaque that it is practically unusable, and when prison officials actively thwart

4     inmates from pursuing the process through misrepresentation, intimidation, or obstruction.

5     *Id*. at 633.

6          In this case, Plaintiff asserts that he filed grievance KVSP-O-19-00153 as an emergency

7     appeal and that prison officials obstructed his ability to exhaust remedies by misclassifying or

8     delaying the grievance. He further contends that systemic misconduct rendered the process

9     unavailable. The record, however, does not support a finding that any of the *Ross* exceptions

10    apply.

11         Plaintiff submitted the grievance on January 2, 2019, and it was rejected on January 14,

12    2019, for exceeding the allowable number of appeals within a fourteen-day period.  He was

13    informed that he had thirty days to correct and resubmit the grievance.  Plaintiff resubmitted the

14    grievance on February 19, 2019, which was beyond the thirty-day correction window. The appeal

15    was cancelled as untimely, and Plaintiff was advised of his right to appeal the cancellation.  He

16    did not pursue that appeal, nor did he submit a new grievance addressing the same incident. *See*

17    *Oden v. Voong*, 2020 WL 1322943, at *12-14 (N.D. Cal. Mar. 20, 2020) (holding that failure to

18    timely appeal a cancellation cannot satisfy the PLRA's exhaustion requirement); *see also Lindsey*

19    *v. Tait*, 2019 WL 2867172, at *5–6 (E.D. Cal. July 3, 2019) (holding that failure to file a separate

20    appeal to the second level review cancellation did not satisfy the PLRA's exhaustion

21    requirement).

22         Plaintiff's assertion that the grievance was submitted as an emergency does not alter the

23    analysis. Under California Code of Regulations, Title 15, § 3084.9(a), an emergency appeal must

24    demonstrate a substantial risk of serious injury or irreparable harm if delayed.  The appeals

25    coordinator has discretion to determine whether the appeal qualifies as an emergency.  If the

26    appeal is accepted as such, the first level of review is bypassed, and the second level must

27    respond within five working days.  If the appeal is not accepted as an emergency, it proceeds

28    through the standard process.  In this case, there is no evidence that the grievance was accepted as

14

1    an emergency or that Plaintiff was prevented from pursuing it through normal channels. *See, e.g.,*

2    *Vaughn v. Hood*, 2015 WL 5020691, at \*11 (E.D. Cal. Aug. 21, 2015) (explaining that "plaintiff's

3    appeal is not properly construed as an emergency" because he "included no specific facts

4    suggesting the appeal should be processed on an emergency basis."), *subsequently aff'd*, 670 F.

5    App'x 962 (9th Cir. 2016).

6         Finally, Plaintiff has not presented evidence that prison officials misled him, intimidated

7    him, or otherwise obstructed his ability to appeal the cancellation or file a new grievance.  Thus,

8    the record supports a finding that available remedies were not properly exhausted, and no

9    exception applies.  Therefore, the Court finds that Plaintiff has not demonstrated that

10    administrative remedies were unavailable within the meaning of *Ross*, nor has he shown that his

11    failure to appeal the cancellation was justified.  Accordingly, the undersigned recommends that

12    the District Court grant Defendants' motion for summary judgment concerning Plaintiff's failure

13    to exhaust his administrative remedies as to Defendant Sims.

14         **D.  Declaratory Relief**

15         Plaintiff's alleged Eighth Amendment violations occurred while he was in KVSP custody.

16    Now that Plaintiff is no longer in KVSP custody, the alleged violations are no longer ongoing.

17    The declaratory relief sought is thus retrospective in nature. When a plaintiff seeks retrospective

18    declaratory relief, courts have declined to award such relief where "the issuance of a declaratory

19    judgment . . . would have much the same effect as a full-fledged award of damages or restitution

20    by the federal court[.]"  *Green v. Mansour*, 474 U.S. 64, 73 (1985); *see also Nat'l Audubon Soc'y,*

21    *Inc. v. Davis*, 307 F.3d 835, 848 n. 5 (9th Cir. 2002) ("[W]e consider declaratory relief

22    retrospective to the extent that it is intertwined with a claim for monetary damages that requires

23    us to declare whether a past constitutional violation occurred. In such a situation, however,

24    declaratory relief is superfluous in light of the damages claim." (internal quotations and citations

25    omitted)).  Thus, a claim for declaratory relief would be superfluous in relation to Plaintiff's

26    Eighth Amendment claims for damages.

27         As to any claim for prospective relief, Plaintiff would be unable to demonstrate a

28    likelihood of future harm.  Before the Court can award declaratory relief, it "must first inquire

15

1    whether there is an actual case or controversy within its jurisdiction." *Principal Life Ins. Co. v.*

2    *Robinson*, 394 F.3d 665, 669 (9th Cir.2005).  A "case or controversy" refers to Article III

3    standing.  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007); *see also Krug v.*

4    *Woods*, 9 F.3d 1552 (9th Cir. 1993) ("Jurisdiction to award declaratory relief [ ] exists only in a

5    case of actual controversy." (citations and quotations omitted)).  "[A] plaintiff must demonstrate

6    standing separately for each form of relief sought."  *Friends of the Earth, Inc. v. Laidlaw Env't*

7    *Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).  To satisfy Article III jurisdictional requirements

8    with respect to declaratory relief, "a plaintiff mush show that he has suffered or is threatened with

9    a concrete and particularized legal harm, coupled with a sufficient likelihood that he will again be

10   wronged in a similar way." *Canatella v. State of Cal.*, 304 F.3d 843, 852 (9th Cir.2002) (cleaned

11   up).  An inmate's transfer to another prison typically moots claims for injunctive and declaratory

12   relief that target conditions, policies, or practices at the prior institution, unless the claims are

13   capable of recurring while evading review.  *See Preiser v. Newkirk*, 422 U.S. 395, 402-03 (1975);

14   *Alvarez v. Hill*, 667 F.3d 1061, 1064 (9th Cir. 2012).

15        Here, Plaintiff's transfer to another facility does not fall within the exception for claims

16   capable of recurring while evading review, as there is no reasonable expectation that the same

17   alleged deprivation will arise again.  *See Davenport v. Garcia*, 2014 WL 6879920, at *3 (C.D.

18   Cal. Nov. 30, 2014) (dismissing claims against California Institution for Women officials for

19   declaratory and injunctive relief following plaintiff's transfer to Female Community Reentry

20   Facility); *see also Haro v. McEwen*, 2015 WL 13237401, at *4 (C.D. Cal. July 20, 2015)

21   (dismissing claims against Lancaster prison guards' for declaratory relief following plaintiff's

22   transfer to Corcoran State Prison) (citing *Barrett v. Belleque*, 475 F. App'x 653, 654-55 (9th Cir.

23   2012), *report and recommendation adopted sub nom. Haro v. Doe 1*, 2015 WL 13239092 (C.D.

24   Cal. Sept. 4, 2015), *and report and recommendation adopted sub nom. Haro v. Doe*, 2016 WL

25   7187291 (C.D. Cal. Dec. 9, 2016).

26        Because Plaintiff cannot establish Article III standing—whether based on past

27   constitutional violations or future alleged harm—this Court lacks authority to determine whether

28   he is entitled to declaratory judgment.  Therefore, the undersigned recommends that the District

16

1   Court grant Defendants' Motion and dismiss Plaintiff's claim for declaratory relief as mooted by

2   his transfer.

3       **E. Official Capacity Claims**

4       Plaintiff sues Defendants Munoz and Sims in both their individual and official capacities.

5   (Doc. No. 39 at 17).  A claim against any correctional officer in his or her official capacity is the

6   same as a suit against the employing agency—here, the CDCR.  *See Monell v. New York Dep't of*

7   *Social Services*, 436 U.S. 685, 690 n. 55 (1978).  To the extent Plaintiff seeks monetary damages

8   against CDCR, an arm of the State of California, or Defendants in their official capacity, such

9   claims are barred by the Eleventh Amendment.  U.S.Const., Amend. XI; *Alabama v. Pugh*, 438

10  U.S. 781, 782 (1978); *Penhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984);

11  *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).  The Eleventh Amendment does not bar suits

12  against state officials in their individual capacities, or for declaratory or injunctive relief in their

13  official capacities.  *Monell*, 436 U.S. at 690 n. 54.

14      As stated *supra*, Plaintiff's request for declaratory relief is moot and the TAC does not

15  include a prayer for injunctive relief.  (See Doc. No. 39 at 19).  In his opposition, Plaintiff

16  mentions in passing that he will seek injunctive relief.  (Doc. No. 76 at 5).  However, the Court is

17  unable to consider this request because Plaintiff has failed to plead this form of relief in his

18  operative complaint or otherwise assert a proper request for injunctive relief consistent with the

19  Federal Rules of Civil Procedure.  Even if properly pleaded, the request would likely be moot for

20  the same reasons his request for declaratory relief is moot.  Furthermore, any claim brought

21  against Defendants in their official capacities cannot proceed unless the complaint alleges facts

22  establishing that an official acted pursuant to a policy or custom.  *Monell*, 436 U.S. at 690 n. 55.

23  Here, the TAC contains no allegations that the remaining Defendants acted pursuant to a policy or

24  custom.  Thus, the TAC fails to state a viable claim against Defendants in their official capacity,

25  and Plaintiff may only proceed only with his request for compensatory damages against

26  Defendant Munoz in his individual capacity only. Therefore, the undersigned recommends that

27  the District Court grant Defendants' Motion and dismiss the official capacity claims against

28  Defendants.

17

1    Accordingly, it is **RECOMMENDED**:

2    1.  Defendants' Motion (Doc. No. 69) be GRANTED.

3    2.  The motion for summary judgment be GRANTED as to Defendant Sims for Plaintiff's

4        failure to exhaust admirative remedies and Defendant Simms be dismissed from this

5        action.

6    3.  The motion to dismiss Plaintiff's request for declaratory relief be GRANTED

7    4.  The motion to dismiss Plaintiff's official-capacity claims be GRANTED.

8    5.  Plaintiff's failure to protect claim against Defendant Munoz concerning inmate

9        Nguyen proceed.

10    ## NOTICE TO PARTIES

11    These findings and recommendations will be submitted to the United States district judge

12    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen (14)

13    days after being served with these findings and recommendations, a party may file written

14    objections.  Local Rule 304(b).  The document should be captioned "Objections to Magistrate

15    Judge's Findings and Recommendations."  Parties are advised that failure to file objections within

16    the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d

17    834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

18

19    Dated:    July 28, 2025

20                                        HELENA M. BARCH-KUCHTA
                                          UNITED STATES MAGISTRATE JUDGE
21

22

23

24

25

26

27

28

18